Joe PENA et al., Plaintiffs,

v.

NEW YORK STATE DIVISION FOR YOUTH et al., Defendants.

No. 70 Civ. 4868.

United States District Court,
S. D. New York.

Feb. 11, 1976.

The Legal Aid Society, Juvenile Rights Division by Charles Schinitsky, Mara T. Thorpe, Martin Guggenheim, Brooklyn, N. Y., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of N. Y. by Hillel Hoffman, Asst. Atty. Gen., New York City, for defendants.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

MOTLEY, District Judge.

This action is brought pursuant to 42 U.S.C. § 1983 on behalf of all children placed with and paroled from the Goshen Annex for Boys, an institution within the New York State Training School system, challenging under the Eighth and Fourteenth Amendments the use of isolation, the use of hand and feet restraints, and the use of thorazine or other tranquilizing drugs to control excited behavior of the children. Jurisdiction is conferred upon this court by 28 U.S.C. § 1343(3) and 28 U.S.C. §§ 2201, et seq.

The complaint in this case was filed on November 6, 1970. Although the original complaint challenged only isolation and the use of physical restraints, upon consent of both parties, the constitutionality of the use of medical restraints was added as a triable issue. The complaint herein was filed shortly after the filing of a nearly identical action in *Lollis v. Department of Social Services,* 70 Civ. 4750, which challenged similar practices at the Brookwood Annex, which is also part of the State Training School system. In each case a motion for a preliminary injunction was made.

Judge Morris E. Lasker treated the actions as companion cases although he did not consolidate them. On December 18, 1970, he ruled that the isolation of the named plaintiffs in both Pena and Lollis constituted cruel and unusual punishment in violation of the Eighth Amendment. *Lollis v. Department of Social Services,* 322 F.Supp. 473 (S.D.N.Y.1970). He enjoined defendants in both cases from imposing extended isolation on inmates pending approval by the court of regulations to be submitted by defendants. In the same opinion, Judge Lasker declined, because of an unresolved factual issue, to enjoin the defendants from handcuffing or binding the feet of children in the training schools, and denied defendants' motion to dismiss the complaint.

Subsequent to the issuance of the injunction, but prior to approving the proposed regulations drafted by defendants, the Second Circuit Court of Appeals decided *Sostre v. McGinnis,* 442 F.2d 178 (1971). Since that case appeared to stand for the proposition that a federal district court should not supervise internal regulations of state prisons,[1] Judge Lasker modified his first order by eliminating the need for defendants to submit proposed regulations, and enjoined the defendants only from placing Pena (and Lollis) in isolation under the conditions alleged in the original complaints. In so doing, the court acknowledged that the defendants advised the court that "an injunction relating to one plaintiff would be 'respected by the State of New York to the same degree as an injunction on behalf of unknown and unspecified plaintiffs.'" *Lollis v. Department of Social Services,* 328 F.Supp. 1115, 1119 (S.D.N.Y. 1971).

The case was declared a class action on January 19, 1971, by Judge Lasker, and on May 17, 1971, Judge Lasker issued a modified injunction which provided "that defendants be and they hereby are enjoined pending trial from placing plaintiffs or any member of the plaintiff class in isolation under the conditions alleged in the respective complaints."

On October 28, 1971, asserting evidence of violations of the injunction, plaintiffs moved for an order amending the preliminary injunction (1) to forbid the continued imposition of isolation upon members of the plaintiff class in excess of twenty-four hours; and (2) to forbid the continued imposition of isolation upon members of the plaintiff class in stripped rooms. The motion was never ruled upon, and plaintiffs withdrew it on February 6, 1973.

Discovery was then undertaken which, by order of this court, was completed by October 1973. On February 5, 1974, defendants moved for the convening of a three-judge court pursuant to 28 U.S.C. § 2281 to hear those portions of plaintiffs' case which sought to enjoin, on constitutional grounds, implementation of the state-wide regulations of the Division For Youth. Plaintiffs did not oppose the motion, and on February 15, 1974, this court granted said motion by written opinion. On March 18, 1974, both parties withdrew their prayer for any injunctive relief which would prohibit defendants from taking any action authorized by state-wide regulations, thereby obviating the need for a three-judge court. On May

---

1. *But see* post-*Sostre* decisions in *Inmates of the Attica Correctional Facility v. Rockefeller,* 453 F.2d 12 (2d Cir. 1971); *Rhem v. McGarth,* 326 F.Supp. 681 (S.D.N.Y.1971); *see also, Nelson v. Heyne,* 355 F.Supp. 451 (N.D.Ind.1972), aff'd 491 F.2d 352 (7th Cir. 1974), *cert. denied* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Inmates of the Boys' Training School v. Affleck,* 346 F.Supp. 1354 (D.R.I.1972).

28, 1974, trial commenced before this court, and continued on May 29, 30, 31, June 3 and 7. Said trial included extensive testimony by expert witnesses for both sides in addition to testimony by boys who had spent time at Goshen as well as administrators of Goshen and the New York State Division For Youth. In addition, 211 exhibits were admitted.

On July 30, 1974, defendants amended to some extent the administrative regulations with respect to room confinement and physical and medical restraints, 9 N.Y.C.R.R. 168.2 and 168.3, and indicated by letter of August 2, 1974, to this court, that they consented to be enjoined to follow the regulations as amended. By opinion rendered on June 5, 1975, this court ruled that such concession did not render the questions at issue moot, and thus the court proceeds at this time to rule as to all of the issues raised at trial.

A preliminary determination which must be made by this court before turning to the specific practices challenged in this case regards the nature of the institution in question and the duties owed to the boys sent there. Goshen Annex Center is a training school operated by the New York State Division For Youth for teenage boys who have been adjudicated delinquent in civil proceedings pursuant to New York Family Court Act § 731 and involuntarily placed with the New York State Division For Youth pursuant to Family Court Act § 756. Goshen Annex is the only maximum security facility for boys maintained by the Division For Youth, and boys are not sent directly to Goshen, but are transferred there from other training schools if they present behavior problems with which the first school to which they are assigned cannot cope.

■ Because Goshen is an institution which is a part of the juvenile justice system of the State of New York, it is the conclusion of this court that the boys placed there have a constitutional right to rehabilitative treatment.

In the past few years, the United States Supreme Court has reviewed four cases arising out of the juvenile justice system to determine whether the Constitution requires that specific procedural due process rights be accorded juveniles subject to adjudication in that system. *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). While none of these cases required the Court to address itself squarely to the question of the juvenile's right to rehabilitative treatment, the conclusion which this court draws from a reading of those cases is that such a right does exist. In declining to find that all procedural safeguards available to adult defendants are mandated for the juvenile, the Court made it clear that the constitutional justification for this procedural deprivation is the *parens patriae* underpinning of the juvenile justice system and its absolute proscription against punishment and retribution as permissible objectives. The premise relied upon by the Court in each case was that the objectives of the juvenile justice system "are to provide measures of guidance and rehabilitation for the child . . . not to fix criminal responsibility, guilt and punishment." *Kent v. United States, supra* at 554, 86 S.Ct. at 1054.

Thus, juveniles, when they are held, are held in noncriminal custody; they are persons civilly committed without the full panoply of protections attendant upon a criminal trial. Accordingly, a number of lower federal courts have held outright that they have a right to rehabilitative treatment. *Martarella v. Kelley*, 349 F.Supp. 575 (S.D.N.Y.1972); *Nelson v. Heyne*, 355 F.Supp. 451 (N.D.Ind.1972), *aff'd* 491 F.2d 352 (7th Cir. 1974), *cert. denied* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Morales v. Turman*, 364 F.Supp. 166 (E.D.Texas 1973); *Inmates of Boys Training School v. Affleck*, 346 F.Supp. 1354 (D.R.I.1972). As the court in *Martarella* concluded:

"There can be no doubt that the right to treatment, generally, for those held in non-criminal custody (whether based on

due process, equal protection or the Eighth Amendment, or a combination of them) has by now been recognized by the Supreme Court, the lower federal courts and the courts of New York." 349 F.Supp. at 599.

■ Thus, considering the underlying assumptions of the above cited Supreme Court cases and the outright assertions of those lower court cases cited, and considering, too, the recent Supreme Court decision regarding the right to treatment of persons civilly committed to mental health institutions, *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396, 43 U.S.L.W. 4929 (1975), this court finds that the detention of a youth under a juvenile justice system *absent provision for the rehabilitative treatment of such youth* is a violation of due process rights guaranteed under the Fourteenth Amendment.

■ Plaintiffs challenge certain practices of the staff at Goshen Annex which they claim to be punitive and anti-therapeutic, namely, the use of isolation, the use of hand and feet restraints, and the use of thorazine or other tranquilizing drugs ("medical restraints") to control excited behavior of the boys at Goshen. Their argument is that to the extent that such practices are anti-therapeutic and punitive, they are violative of plaintiffs' right to treatment under the Fourteenth Amendment as well as constituting cruel and unusual punishment contrary to the Eighth Amendment. The court concurs in such argument, and thus finds itself in the very difficult position of evaluating the punitive and therapeutic components of defendants' practices. This is a task for which the judicial branch perhaps is not ideally suited, yet it is a task which must be assumed in cases such as this, where there is a clear showing that plaintiffs' rights under the Constitution—and indeed, also under the regulatory scheme initiated by the State of New York—have been violated. In undertaking its task, the court views its role not to be that of ultimate purveyor of standards of treatment. Rather, it sees itself as a guiding force in an evolutionary process. By specifically declaring certain practices to be unconstitutional, the court is attempting to furnish parameters for those administering the juvenile justice system, but such parameters are not inflexible. As the science of treatment in such cases matures, one can expect new insights as to effective therapy and, in turn, new parameters. While the task of evaluating such changes falls first on the executive branch of the system, the judiciary may be compelled to intervene periodically to objectively evaluate new developments. The interplay between administrator and judge which results is meant to be mutually supportive and constructive rather than competitive.

In the instant case, evidence adduced at trial has clearly convinced this court that each of the three specific practices complained of has been utilized at Goshen in such a way as to render such utilization punitive and anti-therapeutic, and therefore unconstitutional. However, the court does not at this time conclude that in every instance the use of isolation, the use of hand and feet restraints, and the use of thorazine or other tranquilizing drugs to control excited behavior in children are unconstitutional. During the course of the trial, genuine and, for the present, irreconcilable differences were raised by the testimony of expert witnesses as to whether or not each of the three basic practices complained of could or should in any case be a valid part of a juvenile rehabilitative program. Furthermore, during the course of the trial and post-trial proceedings, this court was apprised of the fact that a new director has been appointed to Goshen, under whose administration significant strides toward improving the treatment of boys there have been taken, and was further apprised that the Division For Youth has formulated amended regulations which seem to meet many of the objections raised by expert critics of the challenged practices. In light of these encouraging developments, it would seem to this court to be unnecessary at this time to declare the use of each of the challenged practices to be unconstitutional in every instance. The court does not wish to deprive Goshen's administrators of

the flexibility essential to developing a valid juvenile rehabilitation system. Of course, should the discretion which the court is affording the school administration be abused—as it has been in the past—the protection of the courts may be invoked once more.

█ In light of the very serious constitutional abuses which it finds to have occurred at Goshen in the past, the court at

this time does feel compelled to take certain actions to reduce the chance of their repetition. In the first place, this court enjoins defendants from violating their own regulations governing room confinement and the use of physical and medical restraints, contained in 9 N.Y.C.R.R. §§ 168.2 and 168.3, as amended February 26, 1975,[2] and declares such regulations to be minimal constitutional standards which must be adhered to in

2. 168.2 Standards relating to the use of room confinement. (a) *Definition of room confinement.* For the purpose of this Part, the term *room confinement* shall mean confinement of a child in a room, including the child's own room, when locked or when the child is authoritatively told not to leave.

(b) *Room confinement shall not be used as punishment.* It shall be used only in cases where a child constitutes a serious and evident danger to himself or others. It is not to be considered, in itself, as a method or technique of treatment.

(c) *Place of confinement—environmental needs.* Places of confinement within the institution shall be designated by the institution superintendent (or director) and approved by the director of the division for youth or his designee. The place of confinement shall be lighted, heated and ventilated the same as other comparable living areas in the institution.

(d) *Required furniture and furnishings within the place of confinement.* The place of confinement shall be furnished with the items necessary for the health and comfort of the occupant, including, but not limited to, a bed, chair, desk or chest, mattress, pillow, sheet and blanket. If the possession of any of these items would be detrimental to the safety of the occupant or others, they may be removed during that period upon authorization by the superintendent (or director) or the acting superintendent (or director).

(e) *Authorization of room confinement.* Room confinement shall be authorized only by the superintendent (or director) or the acting superintendent (or director). Authorization should be obtained prior to actual placement in room confinement. In instances where immediate physical restraint is clearly necessary, authorization must be obtained within 15 minutes of lock-up.

(f) *Maximum period of confinement.* The maximum period of confinement shall not exceed 24 consecutive hours without the approval of the director of the division for youth or designee within the bureau.

(g) *Visitation.* For the purpose of this Part, a visit shall mean actual entry into the room of confinement with the child or removal of the child from the room of confinement for the purpose of discussion or counseling. A visit

shall not include routine visual checks or discussion through the door or window of the confinement room. Children in room confinement shall be visited at least once each day by the following institutional personnel:

(1) *Administrative staff*—a person at least at the level of senior youth parole worker, assistant director of cottage program or higher.

(2) *Clinical staff*—psychiatrist, psychologist, social worker.

(3) *Medical staff*—a nurse or physician shall examine the child in room confinement on a daily basis.

A record of visits shall be maintained by the school (or center) on forms designated by the division and shall be posted on the door of the confinement room during the entire period of confinement.

(h) *Reading materials.* Educational and recreational reading materials shall be provided within the first 24 hours unless the superintendent (or director) or acting superintendent (or director) shall determine that such materials shall be detrimental to the child's rehabilitation. These materials shall be provided on a daily basis thereafter.

(i) *Recreation and exercise.* For the purpose of this Part, recreation and exercise shall be defined as an activity taking place outside the room of confinement and shall mean to include, sports, athletics, games, light physical exercise and like activities. It shall not include hard labor, unduly arduous exercise and other activities of a generally unpleasant or punishing nature. Recreation and exercise shall be provided on a daily basis for at least one prescribed period of not less than 30 minutes unless the superintendent (or director) or acting superintendent (or director) shall authorized [sic] its deletion upon determination that such a liberty would present a serious and evident danger to the child or others.

(j) *Reports of room confinement.* Schools and centers must report each instance of room confinement, lasting more than one hour on forms designated by the division. Every instance where physical or medical restraints are used shall be reported on these forms, regardless of the length of time of the subsequent confinement. Reports are to be submitted on a weekly basis to the director of the bureau of

the administration of a juvenile training school.   Secondly, the court will set out children's institutional services.  For the purpose of this Part, a week begins on a Monday and ends on a Sunday.  Reports are to be submitted on or before Tuesday of the following week.  A copy of each report shall be sent to the ombudsman assigned to that institution.

(k) *Consecutive periods of room confinement.*

(1) Any student who is returned to room confinement within six hours of his release shall be considered to have been in continuous room confinement for purposes of reporting and seeking central office approval; however, a notation as to unsuccessful efforts to return the student to program should be made so that an accurate description of the confinement is available.

(2) Return to room confinement after a lapse of six hours from the time of release shall be considered as commencing a new period of room confinement for the purpose of reporting and seeking central office approval.

(3) Manipulation of consecutive periods of room confinement to evade reporting and approval requirements, or to evade the spirit of the division's regulations, is prohibited.

(*l*) *Review and request for extension of room confinement.*  A review of the necessity for continued room confinement shall be made prior to the beginning of each new 24 hour period by the superintendent (or director) or acting superintendent (or director).  Room confinement may be extended beyond the 24 hours only with the approval of the director of the division for youth or designee.  Approval shall be obtained prior to the beginning of each 24 hour period.  Initially, such requests may be made orally (by telephone).  The request must then be submitted in writing on forms designated by the division.  This written request must be forwarded to the director of the division for youth or his designee within 24 hours of the oral request.

(m) Every effort shall be made to return the child to the regular program of case as quickly as possible.

168.3  Use of Physical and Medical Restraints.

(a) *Physical Restraints.*  Physical restraints shall be used only in cases where a child is uncontrollable and constitutes a serious and evident danger to himself or others.  They shall be removed as soon as the child is controllable. The use of physical restraints shall be prohibited beyond one-half hour.  If restraints are placed on a child's hands and feet, hand and foot restraints are not to be joined, as for example, in hog tying.  When in restraints, a child may not be attached to any furniture or fixture in the room.  Nothing in this section shall preclude the use of restraints in the transportation of the child from one institution to another.

below an outline of practices which it finds to have occurred at Goshen in the past and

(1) The division shall prohibit the utilization of foot manacles.

(2) Physical restraints may be utilized beyond one-half hour only in the case of vehicular transportation where such utilization of physical restraints is necessary for public safety.

(b) *Medical restraint.*  For the purpose of these regulations, medical restraint shall mean medication administered either by injection or orally for the purpose of quieting an uncontrollable child.

(1) Medical restraint shall be administered only in situations where a child is so uncontrollable that no other means of restraint can prevent the child from harming himself.

(2) Medical restraint shall be authorized only by a physician and be administered only be a registered nurse or a medical doctor.

(c) *P.R.N. orders of psychiatric medication.* A "Per Registered Nurse" order, authorizing a registered nurse to administer prescribed psychiatric medication, for purposes of crisis intervention, may be used by the Division For Youth pursuant to the following guidelines:

(1) Prescription by medical doctor.  Before any P.R.N. order may be prescribed, a medical doctor must examine the child and determine the need for such an order in terms of the individual child's ongoing treatment needs at the facility.  These P.R.N. orders shall be prescribed on an individual basis and shall not be prescribed pro forma to all children at the time of their arrival at a facility, as follows:

(a) The medical doctor must sign the order and the medical doctor must provide specific instructions and guidelines for the nurse.

(b) Periodic review of all P.R.N. orders must be made by a medical doctor, monthly, including physically examining the child.

(c) At the time of the periodic review, the medical doctor must indicate, in writing, reasons for his continuing the P.R.N. order.

(2) Administration by registered nurse.  A registered nurse may administer a P.R.N. order when the actions of the child clearly present a danger to himself or other residents as follows:

(a) She must physically examine the child and refer to the child's medical record including the specific instructions left by the medical doctor for utilization of the P.R.N. order.

(b) The pulse and blood pressure of children receiving such medication must be taken during the first half hour by the nurse and periodically thereafter until his release.

(c) The nurse must keep a record indicating the results of those examinations and shall prepare a medication report indicating reasons giving rise to her dispensing the medication.

(d) If the initial or subsequent examination by the nurse reveals the development of any symptoms indicating an adverse reaction to

which it now declares to be unconstitutional. Such injunctive and declaratory relief is intended to provide guidelines under which a viable and effective juvenile rehabilitation system may develop.

The court feels compelled to enjoin defendants to follow their own regulations because of the doleful record of noncompliance which has existed in the past. The evidence shows, for example, that room confinement was repeatedly used as punishment for refusal to comply with staff instructions, poor coöperation, or negative attitude, though 9 N.Y.C.R.R. 168.2(b) specifically states that such confinement "shall not be used as punishment" but only "where a child constitutes a serious and evident danger to himself or others." Similarly, regulations as to staff visitation, recreation and exercise, and reading material for boys in such confinement were also violated repeatedly, as were regulations regarding the reporting of confinements. Physical restraints were also shown to have been used punitively, rather than "only in cases where a child is uncontrollable and constitutes a serious and evident danger to himself or others." 9 N.Y.C.R.R. 168.3(a). Most shocking to the court are violations of the regulations on the administration of drugs, which are to be used "only in situations where a child is so uncontrollable that *no other means of restraint can prevent the child from harming himself.*" (emphasis added.) 9 N.Y.C.R.R. 168.3(b). Despite such a serious condition placed on the use of medical restraints, it appears from the testimony of boys at Goshen that the staff in at least some instances perceived and used it as a punitive device.

In light of such violations, an injunction with the possible sanctions attached thereto seems an essential remedy for plaintiffs in this case. Even if the court were not to declare such regulations to be minimally acceptable standards under the Constitution—which it does—it nevertheless would have the jurisdiction to enjoin the violation

of New York State regulations. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The court may issue this injunction even though defendants have apparently ceased many of the practices which amount to violations of the regulations. *Wright v. McMann,* 387 F.2d 519 (2d Cir. 1967); *Nolan v. Fitzpatrick,* 451 F.2d 545 (1st Cir. 1971); *Inmates of Boys Training School v. Affleck, supra.* Since defendants have not conceded any unconstitutionality or illegality of their practices, they may at any time revert to those practices unless this court orders injunctive relief. Indeed, defendants have themselves consented to the imposition of such injunctive relief in this case.

In reaching the decision to grant such relief, the court has considered each of the following situations which it finds to have occurred at Goshen and which it now declares to be violative of the Eighth and Fourteenth Amendments.

■ 1) Boys have been placed in isolation ("room confinement") for punitive reasons, despite the fact that such isolation causes clearly anti-therapeutic hostility and frustration. Examples include placement or continuance in isolation for failure to go to church, for failure to apologize for bad behavior, for receipt of "bad conduct memors," etc.

■■ 2) Even in cases where boys have been placed in isolation because their violent behavior represents a threat to themselves or others—a reason which this court accepts as a possible justification for isolation—their behavior has not been assessed at frequent intervals so that they might be released as soon as their violent mood subsided. Indeed, for some time, boys were evaluated only once every twenty-four hours as to their attitude and prospects for release. In the opinion of this court, except in the most extreme circumstances, no boy should be held in isolation for more than six hours, and the condition of isolated boys

---

the medication, she shall immediately notify the medical doctor.

(e) Reporting requirements. Use of physical and medical restraints shall be reported, pursuant to Section 168.2.

should be evaluated at least hourly by a visit from a staff member.

3) Accurate records regarding boys held in isolation over one hour have in many cases not been kept, and boys have been held in room confinement for periods of over 24 hours without permission from appropriate authorities in the New York State Division For Youth. Even when isolation is warranted, such record keeping is essential to ensure that the practice is not abused.

4) Boys' hands and feet have been bound by handcuffs and plastic straps at Goshen for hours at a time. They have been bound in this manner with a device connecting hands and feet behind their backs and have been left lying on their stomachs on the floor. They have been bound to beds. The use of such physical restraints is highly anti-therapeutic and should be tolerated only in cases where a child is a serious and evident danger to himself or others and incapable of being controlled by any less restrictive means such as restraint by a staff member. In no case should such physical restraints be utilized for more than 30 minutes (with the exception of vehicular transportation where there is a clear danger to public safety), and in no case should hands and feet be trussed together. Likewise, in no cases should a boy be restrained to a piece of furniture.

5) Thorazine has been administered intramuscularly at Goshen as punishment or as a behavior control device. Goshen has obtained standing orders, known as PRN orders, from physicians for such injections for every child upon his admission to the institution, and such orders have been renewed as a matter of perfunctory routine. Thorazine has been administered by nurses at Goshen without appropriate follow up checks for possible side effects. In the view of this court, the use of thorazine may only be allowed as part of an ongoing treatment program authorized and supervised by a physician. This involves a preliminary determination by a physician at a physical exam of the boy that the use of thorazine is possibly warranted, and a re-determination of such fact at monthly examinations of a person thereafter. A boy given thorazine must be checked within one half hour of administration for possible adverse side effects. Furthermore, it is the opinion of this court, though present regulations do not so read, that any boy to whom thorazine is to be administered must be given the option of taking the drug orally, since indications are that both the physical and psychological effects of oral administration are less hazardous. One expert at trial noted that in a similar institutional environment, eight of ten children given this option chose oral administration despite their disturbed state at the time.

The court, while attempting to broadly cover the list of constitutional shortcomings in past practices at Goshen, does not intend for such list to be considered conclusive. As noted earlier in this opinion, the boys confined at Goshen possess a constitutional right to treatment while there. The boundaries of such right have not as yet been fully explored by the courts. However, those in charge of institutions such as Goshen must themselves accept responsibility for determining the component elements of such right and the means of attaining them; this is, after all, their particular field of expertise. To that end, defendants are of course bound by the injunction and declaratory judgment entered in this opinion, but it is the hope of this court that such actions by it will not be considered strictures inhibiting the work of defendants, but guidelines directing their work in a more beneficial and productive direction.