**Dennis HAYES, a Minor and Sally Hayes, a Minor, Through their parents Walter HAYES and Lucy Hayes, as Best Friends, Plaintiffs,**

v.

**UNIFIED SCHOOL DISTRICT NO. 377, et al., Defendants.**

**William HOLLIS, Plaintiff,**

v.

**UNIFIED SCHOOL DISTRICT NO. 377, et al., Defendants.**

Civ. A. Nos. 83–4249–S, 85–4143–S.

United States District Court,
D. Kansas.

June 12, 1987.

Irigonegaray, Eye & Florez, Pantaleon Florez, Jr., Topeka, Kan., for Hayes in Civ. A. No. 83–4249–S.

Patricia E. Baker, Davis, Unrein, Hummer & McCallister, J. Franklin Hummer, William A. Larson, Gehrt & Roberts, Chtd, Topeka, Kan., for defendants.

Irigonegaray, Eye & Florez, Topeka, Kan., for Hollis in Civ. A. No. 85–4143–S.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the various defendants' motions for summary judgment.

## DENNIS & SALLY HAYES' CLAIMS

The court will first consider defendants' motions as to the claims of Dennis and Sally Hayes. Defendants contend that summary judgment against Dennis and Sally Hayes should be granted because plaintiffs have failed to exhaust their administrative remedies under the Education for All Handicapped Children Act of 1975 (20 U.S.C. § 1401, *et seq.*) and the Special Education for Exceptional Children Act (K.S.A. 72–961, *et seq.*). Dennis and Sally Hayes

have admitted that no administrative procedure was ever requested challenging the use of the time-out room by Tanya Sherman, challenging her policies, nor challenging the children's placement in the Personal/Social Adjustment Program. Defendants also contend that plaintiffs' eighth amendment claims for cruel and unusual punishment are not viable theories of recovery as this case involves a school setting. The individual defendants seek summary judgment on the grounds that the facts simply do not support plaintiffs' state law claims for tort of outrage and damages for emotional distress in that the Kansas Tort Claims Act provides immunity to all of these defendants from any common law causes of action.

In response, plaintiffs claim that they are not required to exhaust their administrative remedies under the Education for All Handicapped Act, 20 U.S.C. § 1400, *et seq.* Plaintiffs claim that section 1400 merely prohibits a filing of a 42 U.S.C. § 1983 action to force a school district to provide the handicapped student with an education. The plaintiffs cite the decision in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), for its holding that a petitioner is entitled to prevail on the independent due process claim without exhausting administrative remedies. Plaintiffs state that they are in Ino way attempting to challenge any aspect of their educational needs. Rather, they seek compensation for the reckless disregard of their rights, guaranteed by the United States Constitution. Specifically, plaintiffs seek relief for being placed in a 3 × 5 room for time-out periods and in-school suspensions. Plaintiffs also argue that their eighth amendment claims are viable as they are not challenging the imposition of corporal punishment. Rather, they seek redress for the inhumane restraints imposed upon their liberty. The plaintiffs further state that the defense of qualified immunity for the individual defendants is not applicable in this case because their actions violated clearly established constitutional rights. Plaintiffs also claim that the discretionary function exception as provided in K.S.A. § 75–6104(d) is inapplicable because the 3' × 5' room is so

inadequate that such a decision cannot be labeled as discretionary. Plaintiffs also contend that their claim for the tort of outrage is supported by the facts in this case.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

For the purposes of this summary judgment motion, the following facts are uncontroverted:

1. During the 1980–81 school year, the plaintiffs in this case, Dennis and Sally Hayes, were tested and placed in the personal/social adjustment program (hereinafter PSA) at the Effingham Middle School.

2. Both children had a history of academic and behavioral problems both inside and outside their academic environment.

3. The Hayes' family history has included contacts with the court system, the Kansas Department of Social and Rehabilitation Services, police departments, mental health facilities, counselors and various school systems.

4. Prior to the 1980–81 school year, both children were tested and evaluated to be candidates for the special education program. (PSA).

5. At the beginning of the 1980–81 school year, both children were placed in the PSA program with the written consent of their mother, Mrs. Lucy Hayes. Placement occurred after a placement conference between Mrs. Hayes and school personnel from the Atchison-Jefferson Educational Cooperative in Unified School District No. 377.

6. The record reflects that neither Dennis, Sally, nor their father, Mr. Walter Hayes, believed that they should be in the PSA program. The mother, however, felt that special services for her children were both proper and needed.

7. During the 1980–81 school year, both children attended some classes outside of the PSA classroom.

8. Until the 1980–81 school year, Mrs. Lucy Hayes made all educational decisions for all of the Hayes children, including conferences with school personnel and visits to the school. It was not until approximately the latter part of 1980, or January of 1981, that Mr. Hayes showed any active decision-making in his children's education.

9. During the 1980–81 school year, instances of truancy, fighting, violent behavior, and willful disobedience of school rules occurred, resulting in notes being sent home with the children. Many of the messages from school never reached home.

10. Both Dennis and Sally Hayes quit school shortly after reaching their sixteenth birthdays, without graduating. Three of the four Hayes siblings had made similar decisions not to graduate.

11. During the 1980–81 school year, there were numerous problems regarding the Hayes children and several of the teachers requested conferences with Mr. & Mrs. Hayes. The parents were not always willing to cooperate or to attend such conferences. In fact, Mr. and Mrs. Hayes often did not pick up certified mail sent by school officials and addressed to Mr. & Mrs. Hayes.

12. Never at any time, either before, during or after the children were placed in the PSA program in the 1980–81 school year did either of the children's parents request a hearing to change the placement of these children.

13. The children's father, Mr. Walter Hayes, after hearing that Dennis and Sally were being placed in an isolation area during the school day, took it upon himself to attempt to remove his children from that portion of the PSA program. Specifically, he sought to have school officials not place his children out in the 3' × 5' room for time-out periods and in-school suspensions.

14. "Time-out" is a phrase used to mean a period of time in which a child may be placed in an isolated area away from other students in order to regain composure and so as not to disrupt the class.

15. Mr. Hayes received his information about the use of the time-out room from talks with his wife, children Dennis and Sally, other parents and children, and saw the 3' × 5' room on one brief visit to the PSA classroom. During his visit, he did not view the behavior of his children which would result in their being placed in the time-out room, nor did he scrutinize the room in question.

16. At no time did Mr. Hayes see the fighting or anti-social behavior nor hear the abusive language exhibited by Dennis and Sally in the PSA classroom.

17. The defendants never placed Dennis or Sally in "time-out" without cause. The same may be said for any and all in-school suspensions. Dennis was placed on in-school suspension, however, for reasons not specifically listed in the school's written grounds for suspension, such as throwing snowballs and walking behind the bus.

18. Ms. Sherman and other school officials had a duty to other children within the PSA program to provide a safe learning environment.

19. During the 1980–81 school year, Mr. Hayes contacted the State Department of Education and the State Fire Marshal's Office. There is no record that either state agency found any violations in the use of the time-out area. Further, Mr. Hayes contacted various attorneys and the Honorable Judge Dolan McKelvy of Atchison, Kansas.

20. At least one conference concerning the Hayes children was held at the school during the 1980–81 school year, attended by David Belderback, Margaret Paul, Tanya Sherman, Beverly Jeffery, Harold Carlson, Debbie McGuire, Wayne Witcher, Leonard Buddenbohm, and Walter and Lucy Hayes.

21. Plaintiffs claim that the emotional problems of the Hayes children stemmed from the use of the time-out room during the 1980–81 school year. Neither plaintiff claims any physical injury. Both Dennis and Sally Hayes did have emotional problems prior to the 1980–81 school year.

24. Mr. Hayes never requested a hearing for their children in order to change placement from the PSA program or the use of the room, even though there was such a hearing procedure available and despite the fact that Mr. Hayes was aware that such a procedure existed.

### Conclusions of Law

The court will first address defendants' contention that summary judgment should be granted because plaintiffs have failed to exhaust their administrative remedies under the Education for All Handicapped Act (EHA), 20 U.S.C. § 1400, *et seq.* (1982). The court finds that it does not agree with the defendants' argument. The court is cognizant of the fact that there is no case law which directly addresses the issue of whether the plaintiffs must exhaust their remedies under the Education for All Handicapped Act (hereinafter EAHCA) under the present facts. The court finds, however, that from its reading of the stat-

ute and the applicable case law, that the plaintiffs' failure to seek remedies under the EAHCA does not act as a bar to the present action. The court further finds that its reading of *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), a decision cited by the defendants, does not stand for the proposition that EAHCA is the exclusive avenue for which the plaintiffs and their parents can pursue their claims. In *Smith v. Robinson*, the Supreme Court limited its holding to a case in which a plaintiff was asserting his equal protection rights to a publicly-financed special education program. *Id.* at 1009, 104 S.Ct. at 3466–67. In fact, the Supreme Court expressly stated that "[c]laims not covered by the EHA should still be cognizable under section 1983 ..." *Id.* at 1003, n. 7, 104 S.Ct. at 3464 no. 7.

A recent decision by the Ninth Circuit, *Doe ex rel. Gonzales v. Maher*, 793 F.2d 1470, (9th Cir.1986) is instructive on the issue presently before this court. The Ninth Circuit noted that Congress enacted the EAHCA in order to help remedy the inadequacy of the educational services provided to the nation's handicapped children. *Id.* at 1479. In addition, regulations were enacted to establish a number of procedural safeguards for the benefit of the parents. *Id.* at 1480. These include the right to written notice whenever the agency proposes or refuses to initiate change in a children's educational program or in placement. The regulations also give the parents the right to present complaints and receive an impartial due process hearing on any matter relating to the provision of a free appropriate public education. *Id.* The court also noted that the Act provides that handicapped children may not be expelled or excluded from school for any misbehavior that is a manifestation of their handicaps. *Id.* at 1480.

The Ninth Circuit narrowed the applicability of the EAHCA as it relates to disciplinary measures taken by school officials. The court found that under the EAHCA, handicapped children may not be deprived of a free appropriate public education as a result of handicap-related misconduct. Any changes in the handicapped child's

placement may be effected only through the EAHCA's unique procedural mechanisms. *Id.* at 1484. The court recognized, however, that these principles do not immunize handicapped children from all discipline. School officials dealing with misbehaving handicapped children may freely employ reasonable disciplinary measures that neither work a deprivation of an appropriate public education nor are substantial enough to constitute "changes in placement" within the meaning of the Act. *Id.*

The court noted that informal and reasonable disciplinary measures that are less substantial, including two and five day suspensions, are simply inoffensive under the EAHCA. The court determined that these types of suspensions (two to five day suspensions) do not amount to either a change in placement or a deprivation of an appropriate public education within the meaning of EAHCA. *Id.* at 1484–85 (citing 34 C.F. R. § 300.513 Comment (1985) (While the placement may not be changed absent EAHCA procedures, the agency may use normal procedures for dealing with children.)) The court noted that while *Goss v. Lopez*, 419 U.S. 565, 572–76, 95 S.Ct. 729, 735–37, 42 L.Ed.2d 725 (1975) recognized that the loss of ten school days is significant enough deprivation to necessitate procedural due process protections, such deprivation is not so substantial as to constitute "a change in placement" or a loss of a "free appropriate public education" within the meaning of the EAHCA.

In reviewing the record, the court recognizes that the evidence establishes that these plaintiffs were given in-school suspensions of up to five days. The court cannot find that these suspensions constitute a change in placement within the meaning of the EAHCA. Thus, the remedies provided by the EAHCA are not the exclusive avenue through which the plaintiffs can bring their cause of action. The suspension and the use of the time-out room complained about in plaintiffs' complaint are not the type of actions against which the EAHCA seeks to protect. The court therefore finds that plaintiffs may bring this action alleging deprivation of

their constitutional rights under 42 U.S.C. § 1983.

■ The defendants also seek summary judgment on plaintiffs' eighth amendment claims on the grounds that the eighth amendment is inapplicable. The court must agree with the defendants. The United States Supreme Court decision in *Ingraham v. Wright*, 430 U.S. 651, 669–671, 97 S.Ct. 1401, 1411–12, 51 L.Ed.2d 711 (1977) and its progeny have definitively held that eighth amendment protection against cruel and inhumane punishment should not be extended to offer a theory of recovery for students of public schools. In *Galas v. McKee*, 801 F.2d 200, 205 (6th Cir.1986), the court stated that it is well settled in case law that the eighth amendment is applicable only to those convicted of crimes. *Id.* Thus, defendants' motion for summary judgment as to plaintiffs' eighth amendment claim should be granted.

The plaintiffs also allege a violation of their fourteenth amendment rights. The United States Supreme Court, other courts of appeals and district courts have recognized that students do not shed their constitutional rights at the schoolhouse door. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975) (quoting *Tinker v. Des Moines School District*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969)). In *Goss*, the United States Supreme Court recognized that the authority possessed by the state to prescribe and enforce standards of conduct in its school is very broad. The court did warn that such authority must be exercised consistently with constitutional safeguards. The court held that the state is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the due process clause. The student's property interest in education may not be taken away for misconduct without adherence to minimum procedures required by that clause. *Id.* at 574, 95 S.Ct. at 736. The court also cited to the due process clause which proscribes arbitrary deprivations of liberty. *Id.*

In *Goss*, the students were given a ten-day suspension from school. The court found that the length of the suspension is not the decisive factor in determining a person's right to a hearing of some kind. The court found that "neither the property interest and educational benefits temporarily denied, nor the liberty interests and reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary." *Id.* at 576, 95 S.Ct. at 737. Thus, the Supreme Court definitively held that a student has both a property right and liberty interest in receiving educational benefits. Therefore, the due process clause does attach to these plaintiffs. The court determined once it is found that due process applies, the question remains what process is due. *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). The court found that at the very minimum, in cases where a student faces suspension and the consequent interference with a protected property interest, the student must be given some kind of notice and afforded some kind of hearing. The court recognized that the timing and the content of the notice, as well as the nature of the hearing, would be dependent upon the competing interests involved. The court held that:

The Due Process Clause will not shield him from suspensions properly imposed, but it diserves both his interest and the interest of the state if his suspension is in fact unwarranted. The concern would be mostly academic if the disciplinary process were a totally accurate, unerring process, never mistaken and never unfair.

419 U.S. at 579–580, 95 S.Ct. at 738–39.

The court found that students facing temporary suspensions have interests qualifying for protection under the due process clause and such due process requires, in connection with the suspension of ten days or less, that the student be given oral or written notice of the charges against him and if he denies them, an explanation of the evidence that the authorities have and an opportunity to present his side of the story. *Id.* at 581, 95 S.Ct. at 739–40. The Court

specifically noted that there need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases, the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. The Supreme Court found that a student should, at a minimum, be given an opportunity to explain his version of the facts. The student must first be told what he is accused of doing and what the basis of the accusation is. The Court also noted that there are recurring situations in which prior notice and hearing cannot be insisted upon. In cases where students pose a continuing danger to persons or property or pose an ongoing threat of disrupting the academic process, such students may be immediately removed from school with the necessary notice and hearing following as soon as practicable. *Id.* at 582, 95 S.Ct. at 740.

The decision in *Vail v. The Board of Education of Portsmith School District,* 354 F.Supp. 592 (D.N.H.1973), cited by the Tenth Circuit in *Goss,* provides another analysis of a student's protection under the fourteenth amendment. The court found that the pivotal point in which disciplinary actions become subject to constitutional scrutiny is when the action adversely affects the basic right of a student to an education. The court found that it would be impracticable to prepare written specifications of charges and give notice and hold a hearing before every temporary suspension of a high school student. The court therefore found that it was only in cases where a lengthy suspension was to be imposed, does the constitutional right to due process require written specification of charges, notice, and a full prior hearing. *Id.* at 603. Otherwise, the student should be informed as to why the suspension is being imposed and the student should be given an opportunity to persuade the school official that the suspension was not justified. *Id.*

The court also must distinguish the case cited by the plaintiff, *Pena v. New York State Division for Youth,* 419 F.Supp. 203, 210 (S.D.N.Y.1976). In *Pena,* the plaintiffs were boys who had been placed in, and paroled from, the Goshen Annex for Boys, an institution within the New York State Training School System. In that case, the plaintiffs alleged cruel and unusual punishment in violation of the eighth amendment. The court finds that the isolation spoken of by the plaintiffs in *Pena* is not to be compared to the use of a time-out room in this case. In *Pena,* the court was speaking of the type of isolation wherein the boys were placed in an isolation cell for periods of over twenty-four hours without any type of evaluation. It is clear from the facts in this case that when students were placed in the time-out room, supervision over that student was maintained at all times. It is further uncontroverted that the room was in an annex of the classroom. Even if the student could not be directly seen, that student could be heard by the teacher in the connecting classroom. The court finds that the court's finding of a violation of the eighth and fourteenth amendment in *Pena* is not controlling to the court's decision in this case.

It is clear that the plaintiffs had a property and liberty interest in receiving an education. The court will now review the facts presented in this case to determined what process was due to these plaintiffs. The uncontroverted facts demonstrate that at the beginning of the 1980–81 school year, both Dennis and Sally Hayes were placed in the PSA program with the written consent of their mother, Mrs. Lucy Hayes, after a conference with the school personnel from the Atchison-Jefferson Educational Cooperative. Mrs. Hayes felt that these special services were needed by her children. It is also established by the deposition of Lucy Hayes that on the placement form that she signed at the beginning of the school year of 1980–81, it stated that "I hereby give consent for the actions stated herein to be taken immediately." The action meant the placement of her children in the PSA program. The second sentence of the form states: "I understand the reason for the placement; that I may still request a hearing at any time; that I may request a re-evaluation of these students at any time; and that further reassignment,

whether at my request or the school's, can take place only after re-evaluation." Lucy Hayes signed this form at the time she consented to placement. In her deposition, however, Mrs. Hayes concedes that while these statements were contained on the placement form that she signed, she did not know that she could request a hearing or replacement or re-evaluation at any time while Dennis or Sally were in the PSA program.

The record also clearly establishes that at least once a year, both Dennis and Sally went through a process of re-evaluation by the PSA staff, after which a meeting was held between the committee members and Lucy Hayes. At each of those meetings, Mrs. Hayes was given a sheet of paper that listed the rights that the Hayes parents and their children had with regard to placement. At the time of her deposition, however, Mrs. Hayes, did not recall her right to a hearing or recall that any of the members of the committee orally told her that if she was not pleased or satisfied with the children's placement, that she had a right to request a hearing before certain individuals. She does remember that she signed an evaluation form stating her rights at the end of each re-evaluation. At her deposition, Mrs. Hayes also stated that her husband, while invited, never attended any of the meetings in which the children's re-evaluation was discussed.

Mrs. Hayes also testified that she was aware that it was the procedure of the school to place Dennis in the time-out room. Mrs. Hayes specifically testified as to one incident which occurred while Dennis was in the sixth grade. The school called her and asked her to come to school as the teachers were having a problem with Dennis. When she arrived at the school, she observed the time-out room for the first time. At that time, she did not make any complaint about the use of that room. Sometime after October of 1980, Mrs. Hayes had two or three conversations with Mr. Carlson. The general subject matter of the conversations had to do with placing her children in the time-out room. The school officials explained to Mrs. Hayes that her children were going to have to be placed in the time-out room when they had three write-ups. Mrs. Hayes was also told that in-school suspension involved placing the children in the time-out room for a period of days. Mrs. Hayes was also aware that the school also employed a separate disciplinary system called "the cooling down period" in which students were placed in the time-out room for very short periods of time.

Mrs. Hayes testified at her deposition that she told the school that she did not want her children placed in the time-out room. She requested that if the school officials were having problems with her children that they should be sent home. The response of the school officials to Mrs. Hayes' request consisted of a refusal to do so because of the school's belief that the children would not go home; that they would just roam the streets and goof off. The school felt that they had to keep the children at the school to be punished. It was also conceded by Mrs. Hayes that written notices were sent home with the children when the children received in-school suspensions. The children also received weekly progress reports that Tanya Sherman filled out and gave to the children to bring home to Lucy and Walter Hayes. Mrs. Hayes realized that the children threw some of these notices away.

At Mr. Walter Hayes' deposition, Mr. Hayes testified that he was aware of the placement of his children in the PSA program. He also testified to the fact that he probably read some of the letters which informed he and his wife that they had a right to challenge or appeal the decision of school officials as to the PSA placement of his children. Mr. Hayes did not get involved in any aspect of the plaintiffs' education until October of 1980, when his wife experienced high blood pressure problems. Mr. Hayes testified that based on his lack of knowledge of the PSA program, he really had no reason to challenge the children's placement in the program up until approximately December of 1980. He admitted that he never did challenge Sally and Dennis' placement in the program. The first meeting that Mr. Hayes attended was in

February of 1981, when he met with David Belderback, Margaret Paul, Tanya Sherman, Beverly Jeffery, Harold Carlson, Debbie McGuire, Wayne Witcher and Mr. Buddenbohm to discuss Dennis being placed in the time-out room for throwing a snowball. At the meeting, Walter Hayes told the school officials that he did not want Dennis or Sally placed in the time-out room. He requested that they be sent home rather than placed in the time-out room. The school officials did not comply with Mr. & Mrs. Hayes' request. It is also uncontroverted that while the form signed by the parents at the initial consent for placement in the PSA program and at the time of each re-evaluation advised the parents that they could challenge placement in the PSA, they were not advised of the use of the time-out room nor their right to object to its use.

■ While the court recognizes that the case law clearly states that a student has both a property and liberty interest in receiving an education, the case law further stands for the proposition that a student shall not be deprived of his or her right to an education without due process of law. The court finds, however, that the record has not established that the plaintiffs have been deprived of their property or liberty interests in education. While the court finds that the use of the time-out room may not be the most effective or sensible disciplinary measure, the court cannot find that it constitutes a constitutional deprivation. Rather, the court finds that the school's use of the time-out room ensures that a student would not be deprived of their educational rights while they were on suspension. As Mrs. Hayes testified to in her deposition, the school frowned upon the use of out-of-school suspensions because they felt the students would roam the streets rather than using that time for educational purposes. The facts indicate that when a student was placed in the 3' × 5' room for in-school suspension, that student was to be working on classroom material.

■ The court further finds that the clearly-established procedures, as well as the listed reasons for a write-up, provided the students with adequate notice to enable them to protect against being placed in the time-out room. It was uncontroverted that a student would be placed in the time-out room only after three write-ups for disciplinary violations. The court also finds that the use of the time-out room for cool-down periods does not constitute a constitutional deprivation. Rather, the use of the time-out room for cool-down periods was done to ensure the safety of other students in the classroom from disruptive behavior of another student. The record also indicates that prior to being placed in the time-out room, the students were given sufficient notice of the reason for placement in the room. The record also demonstrates that a written notice was sent home to the parents. Finally, the court cannot find that the record establishes that the use of the 3' × 5' room deprived the plaintiffs of adequate air, ventilation or light.

The court will next address plaintiffs' allegations that plaintiffs' fourth amendment rights against unreasonable seizure have been violated. The court finds that the recent decision in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) is instructive on this issue. The Supreme Court found that the fourth amendment's prohibition on unreasonable seizures does apply to searches conducted by public school officials. The Court recognized, however, that although the underlying command of the fourth amendment is always that searches and seizures be reasonable, what is reasonable depends on the context within which a search or seizure takes place. 469 U.S. at 337, 105 S.Ct. at 741. While this court recognizes that the decision in *New Jersey v. T.L.O.* addressed mainly the issue of the reasonableness of a search within a school context, the reasoning is applicable.

In *New Jersey v. T.L.O.*, the Court concluded:

[T]he accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that

the subject of the search has violated or is violating the law. Rather, the legality of the search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search [or seizure] involves a twofold inquiry: first, one must consider 'whether the ... action was justified at its inception,' *Terry v. Ohio*, 392 U.S. [1] 20 [88 S.Ct. 1868, at 1879, 20 L.Ed.2d 889 (1967)]; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justify the interference in the first place,' *Ibid.*

*Id.* at 341, 105 S.Ct. at 743–44. The Court further found that, "under ordinary circumstances, a search [or seizure] of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search [or seizure] will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search [or seizure] and not excessively intrusive in light of the age and the sex of the student and the nature of the infraction." Id. at 341–42, 105 S.Ct. at 744.

■ After reviewing the record in this case, the court finds that it has not been disputed that the plaintiffs Dennis or Sally Hayes were disruptive in their behavior and violated school rules. The court further finds that the school officials' conduct was reasonably related to their authority and ability to discipline the students and that such discipline, including placing these plaintiffs in the time-out room, was justified. It should be noted that the deposition of Dennis makes clear that he realized that he was involved in many fights throughout his years of schooling. It is also clear that he had a temper and frequently challenged the authority of his superiors. Sally Hayes fought with other students and had a habit of using abusive language in front of other students and teachers. The court therefore finds that defendants' motion for summary judgment on plaintiffs' claims under the fifth amendment should be granted. In sum, the court finds that defendants' motion for summary judgment on plaintiffs' claims under 42 U.S.C. § 1983 should be granted. For the reasons stated above, the court also finds that defendants' motion for summary judgment on plaintiffs' claims under the Kansas Bill of Rights, § 1 and 15, should be granted. The record does not establish that said violations have taken place.

■ The plaintiffs bring this suit under the Kansas Tort Claims Act, K.S.A. § 75–6101 *et seq.* The defendants claim that the discipline by a school district employee of special education students does not support a claim under the Kansas Tort Claims Act. Specifically, defendants claim that when an employee of the school district is making a decision as to the disciplinary measures to be taken as to a given student, the employees are acting within their discretion. K.S.A. 75–6104(d). Section 75–6104(d) provides that an employee acting within the scope of his employment shall not be liable for damages resulting from any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a government entity or employee, whether or not the discretion is abused.

In response to defendants' claim that action against the school district's employees is barred by 75–6104(d), plaintiffs state that they are not challenging the type of discipline imposed; rather, they seek compensation for the inadequate facility used by defendants. It is well settled that public employees of the school district do have the discretion in determining the type and severity of discipline to be used in their classrooms. Webster's New Collegiate Dictionary (1979) defines discretion as "an individual choice or judgment or the power of free decision or latitude of choice within certain legal bounds." In this action, plaintiffs are challenging the inadequate facility used by the defendants. The court finds, however, that in this case it cannot differentiate between the type of discipline imposed and the type of facility used in disciplining the plaintiff.

The court notes that Mr. Hayes testified in his deposition that there was lighting in the time-out room. Mr. Hayes also testified that he could not recall if there was a source of heat and ventilation in the room. Dennis Hayes' deposition establishes that the room was large enough to enable a teacher to move a desk in the room so that a student could do school work while on an in-school suspension. Sally Hayes testified to the fact that while the room was small, it was large enough to place a desk in a certain position. Sally Hayes also testified that there was a light which was located in the room. She further testified that there was a vent on the bottom of the door and there was a crack under the door, measuring about three-fourths of an inch wide, which allowed heat and air to come through. Based on the record presented, the court cannot find that the employees of the Unified School District No. 377 acted outside their discretion in placing the plaintiffs in the time-out room. Specifically, the court cannot find that the plaintiffs have established that the facility was so inadequate as to fall outside of the scope of the defendants' discretion under K.S.A. 75–6104(d). The court therefore finds that defendants' motion for summary judgment of plaintiffs' state law claims under the Kansas Tort Claims Act should be granted.

## WILLIAM HOLLIS' CLAIMS

Defendant Margaret Paul has filed a motion for summary judgment on the claims of William Hollis. The court notes that the plaintiff has not responded to defendant's motion for summary judgment. The court realizes that the court stayed discovery in this action until the court ruled on the summary judgment motion which was pending in the *Hayes* case, No. 83–4249, but did not stay the whole proceeding. This is an action filed by William Hollis against several defendants arising out of his education at Unified School District No. 377 of the Atchison-Jefferson Educational Cooperative. William Hollis claims, as did Dennis and Sally Hayes, that he was deprived of his constitutional rights when he was involved in a time-out program while in a pre-social adjustment classroom. Plaintiff's involvement with the time-out program at the U.S.D. No. 377 took place in the 1980–81 school year. Plaintiff's complaint was filed on April 10, 1985, exactly one year after the plaintiff turned eighteen. Pursuant to Rule 4(j) of the Federal Rules of Civil Procedure, plaintiff then had 120 days to perfect service of process. This service of process has never been perfected upon defendant Margaret Paul. On August 27, 1985, an answer was filed on behalf of several defendants, including Margaret Paul. One of the affirmative defenses raised was that defendant's claims are barred by the statute of limitations.

In defendant's motion for summary judgment, Margaret Paul submits to the court that summary judgment should be granted on plaintiff's claims against her because the statute of limitations precludes plaintiff from making any claims against her as of August 27, 1985. While the defendant recognizes that plaintiff was a minor at the time that alleged violations occurred, he had one year after he turned eighteen to file suit. Plaintiff filed suit on his nineteenth birthday. The plaintiff then had until July 29, 1985, in which to perfect service. Since this service of process was not obtained within the 120–day period, plaintiff's claims are precluded under the one-year statute of limitations as provided in K.S.A. § 60–515.

K.S.A. § 60–515(a) provides that if a person is entitled to bring an action, and at the time of the cause of action or at any time during the period the statute of limitations is running, that person is less than 18 years of age, such person shall be entitled to bring such action within one year after the person's disability is removed. *Id.* Therefore, the plaintiff had one year in which to file suit from the date of his eighteenth birthday.

Rule 3 of the Federal Rules of Civil Procedure provides that a civil action is commenced by filing a complaint with the court. The court notes that the record indicates that an attempt was made to serve Margaret Paul on July 16, 1985, but service was never accomplished. The court finds that as to plaintiff's 42 U.S.C. § 1983

and 42 U.S.C. 1988 claims, Federal Rule 3 is used to determine when the action was brought. The court therefore finds that plaintiff's federal claims under section 1983 and 1988 are not barred by the statute of limitations as the action is deemed commenced at the time he filed his complaint. It is uncontroverted that plaintiff filed his complaint within one year of his obtaining age eighteen as required by Kansas law, section 60–515.

Rule 4 of the Federal Rules of Civil Procedures provides that if a service of summons and complaint is not made upon the defendant within 120 days' after the filing of the complaint, the action shall be dismissed as to that defendant without prejudice. The court notes that Rule 4(j) of the Federal Rules of Civil Procedure provides that if service of summons and complaint is not made upon the defendant within 120 days after the filing of the complaint, and the plaintiff cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative, with notice to such party or upon motion. *Id.* Therefore, the court has the power on its own motion to dismiss this action without prejudice for plaintiff's failure to serve the defendant Margaret Paul.

The court notes that the defendant Margaret Paul has not been prejudiced by plaintiff's failure to serve, as she filed an answer within six weeks after the attempted service on her. The court further notes that on April 10, 1986, Margaret Paul filed a motion for leave to amend her answer to add a defense of improper service of process over her and lack of personal jurisdiction. In an Order dated November 6, 1986, the court found that these defenses were waived pursuant to Federal Rule of Civil Procedure 12(h) by failing to include such defenses in their answer. Based on the defendant's failure to assert this defense in her answer, and in the absence of prejudice to the defendant, the court declines to dismiss this action against Margaret Paul pursuant to Rule 4(j) of the Federal Rules of Civil Procedure. The court does direct the plaintiff to effectuate proper service upon the defendant within 20 days from the date this order is filed.

■ The court will next address plaintiff's state law claim by virtue of the Kansas Tort Claims Act, K.S.A. § 75–6101 *et seq.* (Supp.1982). In determining when the action was commenced as to plaintiff's state law claims, Kansas state law must be used. *See Saraniero v. Safeway, Inc.,* 540 F.Supp. 749, 752 (D.Kan.1982) (citing *Walker v. Armco Steel Co.,* 446 U.S. 740, 748–51, 100 S.Ct. 1978, 1984–86, 64 L.Ed.2d 659 (1980). In *Walker,* the United States Supreme Court clearly stated that Rule 3 should not be used to toll a state statute of limitations. In *Saraniero* the court found that since plaintiff's suit was not commenced for statute of limitations' purposes until defendant was served with process, plaintiff's suit was barred because process was not served until after the two year statute of limitations had run. 540 F.Supp. at 752. K.S.A. § 60–203 provides:

> A civil action is commenced at the time of: (1) filing a petition with the clerk of the court, service of process is obtained, or the first publication is made for service by publication within 90 days after the petition is filed. . . .; or (2) if service of process or first publication is not made within the time specified by provision (1), it is clear from the record, that the defendant Margaret Paul was not served within the 90 day period after the petition was filed. Thus, the statute of limitations was not tolled by filing of the complaint for plaintiff's causes of action under the Kansas Tort Claims Act.

In this case, plaintiff's state claims against defendant Margaret Paul are barred by 60–508 for plaintiff's failure to bring said causes of action within the one year period after plaintiff reached the age of eighteen.

IT IS BY THE COURT THEREFORE ORDERED that defendants Blunt, Carlson, Unified School District No. 377, Atchison-Jefferson Educational Cooperative, Tanya Sherman Fraker, Beverly Jeffery, Margaret Paul, and John McFarland's motions for summary judgment on Dennis and Sally Hayes' claims pursuant to section 1983 are

hereby granted. IT IS FURTHER ORDERED that defendants' motions for summary judgment on plaintiffs' state law claims under the Kansas Tort Claims Act are hereby granted. The clerk is directed to close Case No. 83–4249.

IT IS FURTHER ORDERED that defendant Margaret Paul's motion for summary judgment on William Hollis' claim pursuant to 42 U.S.C. § 1983 and § 1988 is hereby denied. IT IS FURTHER ORDERED that defendant Margaret Paul's motion for summary judgment as to Hollis' claims under the Kansas Tort Claims Act, K.S.A. § 75–6101 *et seq.* and the Kansas Bill of Rights, § 1 and § 15, are granted because said claims are barred by the statute of limitations. IT IS FURTHER ORDERED that William Hollis shall serve Margaret Paul within 20 days from the date this order is filed or the court will consider dismissing Hollis' § 1983 claims against Margaret Paul. IT IS FURTHER ORDERED that the order staying discovery in Case No. 85–4143 is hereby vacated.