Dennis HAYES, a Minor and Sally Hayes, a Minor, Through Their Parents Walter HAYES and Lucy Hayes, as Best Friends, Plaintiffs–Appellants–Cross–Appellees,

v.

UNIFIED SCHOOL DISTRICT NO. 377, Atchison–Jefferson Educational Cooperative; Tanya Sherman, Teacher; Margaret L. Paul, School Psychologist; Beverly Jeffery, Para-professional; Harold Carlson, Principal; Robert L. Blunt, School District Superintendent; John McFarland, Director, P.S.A. Program; All individually and in their official Capacities as Employees and Agents of Defendants, Unified School District No. 377 and Atchison–Jefferson Educational Cooperative, Defendants–Appellees–Cross–Appellants.

Nos. 87–2290, 87–2370 and 87–2372.

United States Court of Appeals, Tenth Circuit.

June 6, 1989.

Pantaleon Florez, Jr. of Irigonegaray, Eye & Florez, Topeka, Kan., for plaintiffs-appellants-cross-appellees.

J. Franklin Hummer, Patricia E. Baker, and Shelden Le Bron, Topeka, Kan., for defendants-appellees-cross-appellants.

Before LOGAN, MOORE and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This is an appeal from the granting of the defendants' motion for summary judgment on an action brought under 42 U.S.C. § 1983 and Kansas state law.[1] The defendants cross-appeal, contending that the action should be dismissed because the plaintiffs failed to exhaust their administrative remedies under the relevant provision of the Education of the Handicapped Act (EHA), 20 U.S.C. § 1415.[2] Because the failure to exhaust administrative remedies is jurisdictional and our decision on that issue is dispositive, we do not review the merits of the district court's findings regarding the plaintiffs' substantive claims. We therefore reverse and remand to the district court with instructions to enter an order dismissing the cause.

I.

The relevant facts are undisputed. Prior to the commencement of the 1980–81 school year, the plaintiff-children, Dennis and Sally Hayes, were tested and evaluated to be candidates for the Personal/Social Adjustment Program (PSA program) through the Atchison–Jefferson Educational Cooperative in Unified School District No. 377. The children's mother, Mrs. Lucy Hayes, met with school personnel to discuss the

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

2. Section 1415 is sometimes referred to as part of the Education for All Handicapped Children Act of 1975, Pub.L. No. 94–142, 89 Stat. 773, which amended the Education of the Handicapped Act.

placement of the children and signed a form agreeing to her children's placement in the PSA program. The signed form also included the following statement:

I understand the reason for the placement; that I may still request a hearing at any time; that I may request a re-evaluation of these students at any time; and that further reassignment, whether at my request or the school's, can take place only after re-evaluation.

*Hayes Through Hayes v. Unified School Dist. No. 377*, 669 F.Supp. 1519, 1526–27 (D.Kan.1987).

Dennis and Sally Hayes were placed in the PSA program for the 1980–81 school year. During that year both children behaved in a disruptive manner and violated school rules. Consequently, the children were required, at various times, to stay in a three-foot by five-foot room for "time-out" periods and in-school suspensions.[3]

Neither of the children's parents requested a hearing at any time to institute a change in placement for the children or to object to the disciplinary use of the three-foot by five-foot room, *Hayes*, 669 F.Supp. at 1521, 1523, although a hearing procedure was available and at least one of the parents was aware of its existence, *id.* at 1523. Instead of pursuing their claims through the administrative hearing procedure, the plaintiffs brought state law claims and a federal section 1983 claim based on alleged violations of the United States Constitution.

## II.

Before considering the plaintiffs' substantive claims we must determine whether these claims are properly before the court, or whether the plaintiffs were required first to exhaust their administrative remedies under the EHA. We begin our analysis by examining the provisions of the EHA.

Congress promulgated the EHA, as amended, in an effort to help state and local agencies meet the burden of providing public education to all handicapped children. *See Board of Educ. v. Rowley*, 458 U.S. 176, 179, 102 S.Ct. 3034, 3037, 73 L.Ed. 2d 690 (1982). "In order to qualify for federal financial assistance under the Act, a state must demonstrate that it 'has in effect a policy that assures all handicapped children the right to a free appropriate public education.'" *Id.* at 180–81, 102 S.Ct. at 3037–38 (quoting 20 U.S.C. § 1412(1)). A handicapped child's right to a "free appropriate public education" is implemented in part by the Act's requirement that an individualized educational program (IEP) reflecting the child's unique needs be developed for each handicapped child, 20 U.S.C. §§ 1401(19), 1412(4), and reviewed at least annually, *id.* § 1414(a)(5).

Additionally, "the Act imposes extensive procedural requirements upon states receiving federal funds under its provisions." *Rowley*, 458 U.S. at 182, 102 S.Ct. at 3038. In an effort to "maximize parental involvement in the education of each handicapped child," *id.* at 182 n. 6, 102 S.Ct. at 3038–39 n. 6, "the Act requires that parents be permitted 'to examine all relevant records with respect to the identification, education, and educational placement of the child, and ... to obtain an independent educational evaluation of the child,'" *id.* (quoting 20 U.S.C. § 1415(b)(1)(A)). Further,

[p]arents or guardians of handicapped children must be notified of any proposed change in "the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to such child," and must be permitted to bring a complaint about "any matter relating to" such evaluation and education.

*Id.* at 182, 102 S.Ct. at 3038 (quoting 20 U.S.C. §§ 1415(b)(1)(D), (E)) (footnote omitted); *see Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1988). When a complaint arises, the Act also pro-

---

**3.** "'Time-out' is a phrase used to mean a period of time in which a child may be placed in an isolated area away from other students in order to regain composure and so as not to disrupt the class." *Hayes Through Hayes v. Unified School Dist. No. 377*, 669 F.Supp. 1519, 1523 (D.Kan. 1987).

vides for procedures to resolve such complaints:

> Complaints brought by parents or guardians must be resolved at "an impartial due process hearing," and appeal to the state educational agency must be provided if the initial hearing is held at the local or regional level. [20 U.S.C.] §§ 1415(b)(2) and (c). Thereafter, "[a]ny party aggrieved by the findings and decision" of the state administrative hearing has "the right to bring a civil action with respect to the complaint ... in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." [*Id.*] § 1415(e)(2).

*Rowley*, 458 U.S. at 183, 102 S.Ct. at 3039.

In 1984 the Supreme Court concluded that the EHA was the exclusive avenue through which claims regarding a publicly financed special education could be pursued. *See Smith v. Robinson*, 468 U.S. 992, 1013, 1021, 104 S.Ct. 3457, 3469, 3473, 82 L.Ed.2d 746 (1984). Given the comprehensive nature of the statutory scheme, including the "elaborate procedural mechanism" established by the Act to protect the rights of handicapped children, *id.* at 1011, 104 S.Ct. at 3468, the Court denied the constitutional claims brought under 42 U.S.C. § 1983 and statutory claims brought under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, that could have been brought under the EHA. *Smith*, 468 U.S. at 1009–13, 1021, 104 S.Ct. at 3466–73, 3473. There being no provision for an award of attorneys' fees in the EHA, the court also rejected the claim for attorneys' fees. *Id.* at 1015–16, 104 S.Ct. at 3470–71.

Subsequent to the *Smith* decision, Congress passed the Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, 100 Stat. 796 (codified at 20 U.S.C. § 1415), expressly amending the EHA to make attorneys' fees available to claimants prevailing under the Act, *see* 20 U.S.C. § 1415(e)(4)(B), and to clarify that the EHA does not provide the exclusive remedy available to handicapped students, *id.* § 1415(f). As the Fifth Circuit stated, "Congress read the Supreme Court's deci-

sion in *Smith* and acted swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent." *Fontenot v. Louisiana Bd. of Elementary & Secondary Educ.*, 805 F.2d 1222, 1223 (5th Cir.1986).

Section 3 of the Handicapped Children's Protection Act of 1986, codified at 20 U.S.C. § 1415(f), provides as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Although Congress' amendment of the EHA makes clear that the EHA is not the exclusive remedy available to handicapped students seeking public educational benefits, that amendment is equally clear in preserving the requirement that, if relief could be sought under the EHA, exhaustion of the Act's administrative remedies is necessary before any action is brought in federal court. *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.1987); *J.G. by Mrs. G. v. Board of Educ.*, 830 F.2d 444, 446 (2d Cir.1987). "In other words, when parents choose to file suit under another law that protects the rights of handicapped children —and the suit could have been filed under the EHA—they are first required to exhaust the EHA's remedies to the same extent as if the suit had been filed originally under the EHA's provisions." *Mrs. W.*, 832 F.2d at 756. The determination here of whether the plaintiffs are required to exhaust their administrative remedies under the EHA, therefore, turns on whether the disciplinary measures giving rise to their action are encompassed within the provision of a "free appropriate public education" guaranteed by the Act.

The plaintiffs contend that the disciplinary measures at issue here are outside of the scope of the EHA and that their claims arising from such measures constitute an independent due process challenge. The district court agreed, concluding that because the disciplinary measures involved did not constitute a "change in placement" within the meaning of the Act, "[t]he suspension and the use of the time-out room complained about in plaintiffs' complaint are not the type of actions against which the [EHA] seeks to protect." *Hayes*, 669 F.Supp. at 1524. We disagree.

The district court correctly noted that the short-term disciplinary measures taken against the plaintiffs here did not constitute a "change in placement" within the meaning of the Act. *See Honig*, 108 S.Ct. at 605 n. 8 (deferring to Department of Education policy that "a suspension of up to 10 school days does not amount to a 'change in placement' prohibited by [20 U.S.C.] § 1415(e)(3)"). The fact that the time-out and in-school suspension periods do not constitute a change in placement within the meaning of the EHA, however, does not remove the action from the purview of the Act.

The EHA requires that parents and children be given "an opportunity to present complaints with respect to *any matter relating to* ... the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(1)(E) (emphasis added). The state or local educational agency charged with the administration of the program is required to conduct "an impartial due process hearing" concerning such complaints. *Id.* § 1415(b)(2). Here, the school's use of the time-out room was clearly related to providing an appropriate public education for the plaintiffs.

School officials placed students in the time-out room for in-school suspension as a method of punishment, and for short "cooldown" periods "to ensure the safety of other students in the classroom from disruptive behavior." *Hayes*, 669 F.Supp. at 1528. Rather than sending the children home as a form of punishment, the school preferred to keep suspended students at school so that the children being disciplined would not "just roam the streets and goof off." *Id.* at 1527. The time-out room was located in an annex of the classroom so that supervision over the student could be maintained while the student remained in the room. The district court specifically found that "the school's use of the time-out room ensures that [the students] would not be deprived of their educational rights while they were on suspension," and that "when a student was placed in the 3′ × 5′ room for in-school suspension, that student was to be working on classroom material." *Id.* at 1528.

This case is illustrative of the close relationship between the use of discipline and in-class instruction in providing a child with a "free appropriate public education." We believe that "[p]roper conduct and education are inextricably intertwined," *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1491 (9th Cir.1986), *cert. granted in part, Honig v. Doe*, 479 U.S. 1084, 107 S.Ct. 1284, 94 L.Ed.2d 142 (1987), *aff'd as modified*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), and hold that the discipline of a child in the classroom, including short-term suspensions and "time-out" periods, is a matter that relates to the public education of a handicapped child and that therefore falls within the scope of the EHA. *See* 20 U.S.C. § 1415(b)(1)(E).

Because the disciplinary measures complained of here are within the purview of the EHA, the plaintiffs are required to present their complaints concerning such disciplinary action according to the procedures set forth by the Act, whether or not they bring additional causes of action "under the Constitution, title V of the Rehabilitation Act of 1973, or other federal statutes protecting the rights of handicapped children and youth," 20 U.S.C. § 1415(f). Congress has determined that the agency charged with developing and instituting a child's individualized educational program must be given the first opportunity to address matters relating to that educational program. As stated by the Eleventh Circuit:

The philosophy of the EHA is that plaintiffs are required to utilize the elaborate administrative scheme established by the Act before resorting to the courts to challenge the actions of the local school authorities. This exhaustion rule serves a number of important purposes, including (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Association for Retarded Citizens, Inc. v. Teague,* 830 F.2d 158, 160 (11th Cir.1987) (citations omitted).

Here, the Hayes "have admitted that no administrative procedure was ever requested challenging the use of the time-out room ... [or] challenging the children's placement in the [PSA] [p]rogram." *Hayes,* 669 F.Supp. at 1521. The district court found that administrative hearing procedures were available and that at least Mr. Hayes was aware that such procedures existed. *Id.* at 1523. The fact that Mr. or Mrs. Hayes may have expressed some concern to school officials about the placement of the children in the time-out room does not satisfy their obligation to request a hearing as required by the Act. *See Evans v. District No. 17,* 841 F.2d 824, 829 (8th Cir.1988) (parents' expressions of concern not enough to trigger procedural mechanisms of Act).

The rule that administrative remedies under the EHA must be exhausted before judicial review is sought, however, should not be applied inflexibly. *Association for Retarded Citizens, Inc.,* 830 F.2d at 160. For example, exhaustion of administrative remedies is not required if adequate relief is not reasonably available or pursuit of such relief would be futile. *See Mrs. W.,* 832 F.2d at 756–57; *Association for Retarded Citizens, Inc.,* 830 F.2d at 160–61; *J.G.,* 830 F.2d at 447. Here, nothing in the record indicates, nor do the parties argue, that administrative relief would be inappropriate in any way.

We hold that the district court erred in proceeding to the merits of the federal constitutional and state law claims in this case, for the reason that the plaintiffs failed to exhaust their administrative remedies as required under the EHA. We therefore REVERSE and REMAND to the district court with instructions to DISMISS for lack of jurisdiction.