Kary WATERMAN, by Freda J. WATERMAN as her Next Friend; Mary Denney, by Norma J. Denney as her Next Friend; Erin Hill, by Joanne L. Hill as her Next Friend; Christopher Waters, by Patricia S. Waters as his Next Friend; David Vahama, by Susan M. Vahama as his Next Friend; Jeffrey Peters, by Beverly Peters as his Next Friend, Plaintiffs,

v.

The MARQUETTE–ALGER INTERMEDIATE SCHOOL DISTRICT; Louis Myefski, Superintendent of the Marquette–Alger Intermediate School District; June Schaefer, Director of Special Education for the Marquette–Alger Intermediate School District; Jeffrey Miller, Supervisor for Classroom Programs/Pre-school Marquette–Alger In-termediate School District; Linda Dompierre, Teacher in the Marquette–Alger Intermediate School District; and Matthew Fields, Teacher in the Marquette–Alger Intermediate School District, Defendants.

No. M89–10127 CA.

United States District Court,
W.D. Michigan, N.D.

May 22, 1990.

---

Paul A. Peterson, Steward, Peterson, Sheridan and Nancarrow, Ishpeming, Mich., Stewart R. Hakola, Michigan Protection & Advocacy Service, Marquette, Mich., for plaintiffs.

Michael B. Farrell, Thrun, Maatsch & Nordberg, P.C., Lansing, Mich., for Marquette–Alger Intermediate School Dist., Louis Myefski, June Schaefer and Jeffrey Miller.

Keith E. Swanson, Marquette, Mich., for Linda Dompierre and Matthew Fields.

W. John Stenton, Ronald D. Keefe, Marquette, Mich., for Alger–Marquette Intermediate School Dist., Louis Myefski, June Schaefer and Jeffery Miller.

## OPINION

HILLMAN, Chief Judge.

This case involves disturbing allegations of excessive and abusive discipline of mentally impaired children at the Pineview School in Palmer, Michigan, during the 1986–87 and 1987–88 school years. Plaintiffs, appearing through their parents and next friends, are six Pineview special education students who allegedly suffered inappropriate discipline ranging from bodily humiliation and the withholding of food and medicine to repeated physical assault. Defendants Linda Dompierre and Matthew Fields are the teachers who allegedly disciplined the plaintiffs. Defendants Louis Myefski, June Schaefer, and Jeffrey Miller are the supervisors who allegedly adopted the customs and policies that allowed Dompierre and Fields to act. Defendant Marquette–Alger Intermediate School District (MAISD) employs the individual defendants. The discipline at issue formed the basis of a state criminal prosecution against Dompierre. She was apparently

acquitted of charges not specified in the record of this case.

Plaintiffs assert causes of action under the Education of the Handicapped Act (EHA), 20 U.S.C. § 1401 *et seq.*, as amended, section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended, section one of the Ku Klux or Civil Rights Act of 1871, 42 U.S.C. § 1983, as amended, and Michigan tort law. They seek declaratory and injunctive relief, compensatory damages, costs and attorneys' fees. The matter is before the court on defendants' motions to dismiss for failure to state a claim upon which relief may be granted, or in the alternative, for summary judgment. Fed. R.Civ.P. 12(b)(6), 56.

The court will treat those portions of defendants' post-answer motions that attack plaintiffs' section 504, section 1983, and EHA damages claims as motions for judgment on the pleadings under Rule 12(c). *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n. 1 (6th Cir.1988). The court will treat the portions of the motions concerning exhaustion of EHA administrative remedies as motions for summary judgment, because on this issue both plaintiffs and defendants refer to matters outside the pleadings. Fed.R. Civ.P. 12(c). The court reviews a motion for judgment on the pleadings according to the same substantive standard as a motion to dismiss, as set forth in *Scheid.* 859 F.2d at 436–37. For an exhaustive discussion of the review standard applicable to summary judgment motions, see *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476–81 (6th Cir.1989).

As detailed below, the court holds that the parties must return this matter to state and local authorities to exhaust adequate and available EHA administrative remedies. This holding counsels against any present action on plaintiffs' section 504 and section 1983 claims. Consequently, this opinion will address only EHA issues. The court will dismiss without prejudice defendants' motions for judgment on the pleadings on the section 504 and section 1983 claims. Defendants may renew these motions if they wish upon their return to this

court following the administrative proceedings.

## I. EHA Damages

■ This court held seven years ago that "monetary damages are not recoverable by a plaintiff bringing suit to vindicate rights conferred by the [EHA]." *Sanders by Sanders v. Marquette Public Schools*, 561 F.Supp. 1361, 1366 (W.D.Mich.1983). The court acknowledged in *Sanders* that some courts recognize a damages remedy under the EHA in certain exceptional circumstances, but it concluded that the better authority did not allow "*any* circumstances in which the reviewing court could award monetary damages." 561 F.Supp. at 1367 (emphasis in original).

Plaintiffs point out that since *Sanders* some federal district courts have continued to find that EHA damages might be available in exceptional cases. *See, e.g., Barwacz v. Michigan Department of Education*, 674 F.Supp. 1296, 1307 (W.D.Mich. 1987) (Enslen, J.); *Gerasimou by Gerasimou v. Ambach*, 636 F.Supp. 1504, 1511–12 (E.D.N.Y.1986). These courts have relied, however, on *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir.1981), a case whose reasoning this court declined to follow in *Sanders.* 561 F.Supp. at 1361. Moreover, other state and federal courts have followed this court's exceptionless no-damages ruling in *Sanders. See, e.g., Smith v. Philadelphia School District*, 679 F.Supp. 479, 484 (E.D.Pa.1988); *Woolcott v. State Board of Education*, 134 Mich.App. 555, 351 N.W.2d 601, 606 (1984). No decision of the United States Supreme Court or the Sixth Circuit has undermined *Sanders'* continuing vitality, nor has any court cogently criticized *Sanders'* reasoning. The court has reexamined that reasoning, and finds its earlier conclusions sound. Accordingly, for the reasons stated in *Sanders'* as well as reasons of *stare decisis*, the court will grant defendants judgment on the pleadings on plaintiffs' EHA damages claim.

## II. EHA Exhaustion

■ No doubt exists that EHA plaintiffs must exhaust their adequate and available state and local administrative remedies before seeking relief in state or

federal court. *Doe by and through Doe v. Smith,* 879 F.2d 1340, 1343–44 (6th Cir. 1989), *cert. denied sub nom. Doe v. Sumner County Board of Education,* — U.S. ——, 110 S.Ct. 730, 107 L.Ed.2d 749 (1990); *Crocker v. Tennessee Secondary School Athletic Ass'n,* 873 F.2d 933, 935–36 (6th Cir.1989). Additionally, EHA exhaustion must occur before plaintiffs may file an action under any other federal law seeking relief that is also available under the EHA. 20 U.S.C. § 1415(f); *Hayes v. Unified School District No. 377,* 877 F.2d 809, 812 (10th Cir.1989). In the present case, plaintiffs' actions under section 504 of the Rehabilitation Act and section 1983 seek relief that is also available under the EHA. This is because all of plaintiffs' claims arise from defendants' allegedly excessive disciplinary acts and practices, and complaints about classroom discipline of special education students are cognizable under the EHA. As the Tenth Circuit stated in *Hayes:*

> ... the discipline of a child in the classroom ... is a matter that relates to the public education of a handicapped child and that therefore falls within the scope of the EHA. *See* 20 U.S.C. § 1415(b)(1)(E). Because the disciplinary measures complained of here are within the purview of the EHA, the plaintiffs are required to present their complaints concerning such disciplinary action according to the procedures set forth by the [EHA], whether or not they bring additional causes of action "under the Constitution, title V of the Rehabilitation Act of 1973, or other federal statutes protecting the rights of handicapped children and youth," 20 U.S.C. § 1415(f). Congress has determined that the agency charged with developing and instituting a child's individualized educational program must be given the first opportunity to address matters relating to that educational program.

877 F.2d at 813.

Accordingly, none of plaintiffs' claims may go forward in this court unless they have exhausted the EHA administrative process. The fact that plaintiffs seek a particular type of relief, money damages,

not available under EHA in light of *Sanders,* is immaterial. To hold otherwise would allow EHA plaintiffs to frustrate Congressional purpose by bypassing the administrative process in virtually every case containing EHA, section 504, or section 1983 damages claims. *See Brandon E. v. Wisconsin Department of Public Instruction,* 595 F.Supp. 740, 745 (E.D.Wis. 1984) (unavailability of EHA damages relief does not alter exhaustion requirement).

■ In Michigan, the EHA is implemented by the Mandatory Special Education Act, codified at Article 3 of the School Code of 1976, Mich.Comp.Laws Ann. § 380.1701 *et seq.,* as amended. In accordance with this statute, the Michigan Department of Education has promulgated rules to govern the administrative disposition of EHA claims. These rules are now codified at Part 2 and Part 8 of the Department's special education rules, Mich.Ad.Code 1979, 1980–87 Annual Ad.Code Supp., R. 340.-1721 *et seq.,* R. 340.1851 *et seq.*

The Part 8 rules generally provide in pertinent part that a private individual may file with an intermediate school district (ISD) a written complaint concerning a violation of the EHA by the ISD. R. 340.-1851(1); R. 340.1701(g)(iii). Following its receipt of a complaint, the ISD must give a copy of Part 8 to the complainant and immediately investigate the complaint. R. 340.1851(1). If the ISD believes the complaint to be without merit, it may request the Department of Education to dismiss it. R. 340.1852(10). Naturally, the rules were designed to facilitate an informal and amicable resolution of the complaint. R. 340.-1853(9). However, if no such resolution occurs within seven days of the complaint's filing, the ISD must offer the complainant a choice between its own investigation of the complaint and investigation by the Department of Education. R. 340.1853(3).

If the complainant chooses the former option, the ISD must issue a detailed written report on the complaint within 21 days of receipt. R. 340.1851(2). If the ISD finds that it violated the EHA, it must file a "position statement" with the Depart-

ment of Education, which will then make appropriate findings and order corrective action and proof of EHA compliance if warranted. R. 340.1851(2)(e); R. 340.1852(3). If the ISD finds no violation, it must inform the complainant of his or her right to contest the finding and right of appeal to the Department of Education. R. 340.-1851(2)(f).

The Department of Education may investigate a complaint where a complainant so requests, either because the ISD fails to act or because the complainant prefers such an investigation after failing to amicably resolve his or her complaint against the ISD within seven days of filing. R. 340.-1852(2); R. 340.1853(3). The Department of Education may also investigate where the complainant has appealed from an adverse ISD finding, or at any time it deems appropriate. R. 340.1851(2)(f); R. 340.-1852(1). The Department of Education may dismiss the complaint on written report if it believes the complaint lacks merit. R. 340.1852(5)(b); R. 340.1852(10). Upon dismissal, the complainant must be informed of his or her right to appeal to state or federal court or to the United States Secretary of Education. R. 340.1852(5). If the Department of Education finds merit in the complaint, it will order the ISD to take corrective action and submit proof of compliance. R. 340.1852(6). At any time during the pendency of a complaint, any appropriate party may request a hearing in accordance with Part 2 of the special education rules. R. 340.1724(1); R. 340.-1851(4).

In the present case, plaintiffs have failed to exhaust this elaborate administrative process. The record contains no hint of any serious effort at informal resolution of plaintiffs' alleged inappropriate discipline claims. So far as the record shows, there has been no investigation of those claims by the MAISD or Department of Education, no hearing, no written report, no appeal, no appellate findings, no position statement, no corrective action or proof of compliance. In essence, the case is before the court without any substantive review by state and local educational authorities. Were this an ordinary case, dismissal for failure to exhaust would surely be appropriate.

The court's inquiry, however, does not end here. As defendants concede, plaintiffs filed formal Part 8 complaints with the MAISD on March 28 and May 3, 1988. These complaints contended, among other things, that alleged abusive discipline of the plaintiffs violated their right to a free appropriate public education guaranteed by the EHA. The MAISD declined to investigate the complaints, and asked the Department of Education to dismiss them, because it concluded that it lacked jurisdiction over allegations of child abuse. The Department of Education agreed, and dismissed the complaints after referring the matter to the Department of Social Services for pursuit of a child abuse investigation. The referral to the Department of Social Services was no doubt proper, and indeed, commendable. Nevertheless, in light of *Hayes* the MAISD and the Department of Education erred in concluding that they had no concurrent EHA jurisdiction over child abuse allegations where the alleged abuse occurred in the context of classroom discipline. *See* 877 F.2d at 813.

Accordingly, it appears that plaintiffs did attempt to *use* the administrative process to air their EHA claims, *Crocker*, 873 F.2d at 935 (emphasis in original), but were prevented from exhausting that process by the MAISD's and Department of Education's erroneous dismissal of their Part 8 complaints. Where failure to exhaust is attributable to error or intransigence by state and local administrative authorities, a reviewing court has two options. First, the court may simply excuse an EHA plaintiff from exhausting his or her claims. This first option is usually followed where the error or intransigence renders administrative remedies futile or inadequate. *See Kerr Center Parents Ass'n v. Charles*, 897 F.2d 1463, 1469–70 (9th Cir.1990). After all, exhaustion is a prudential doctrine, not a jurisdictional prerequisite, *see Crocker*, 873 F.2d at 936, and no good reason exists to demand pursuit of a useless process. Alternatively, the court may, after pointing out the previous defect

in the administrative process, "return" the case to the administrative authorities for continuation of the process with the taint of the error removed. The second alternative carries obvious advantages in furthering the purposes of the exhaustion requirement, for return allows administrative authorities to bring their expertise to bear, to develop a record, and to focus the issues that must be resolved by the court. *See Crocker*, 873 F.2d at 935–36. The Sixth Circuit endorsed this procedure in *Smith*, holding among other things that the district court should not have decided the merits of an EHA claim where a hearing officer's procedural error short-circuited the administrative process and left no substantive decision for the court to review. 879 F.2d at 1343–44. Rather than reaching the merits, the *Smith* court stated, "the district judge should have returned the case to the hearing officer once he determined that the officer incorrectly decided the procedural issue...." *Id.* at 1344. *Accord, Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 775–78 (1st Cir.1981). The *Smith* court made it quite clear that what it meant by "returning" the case was a remand "in order for the hearing officer to reach the substantive issue." 879 F.2d at 1343.

■ The court concludes that return of plaintiffs' excessive discipline claims to the MAISD is the appropriate way to move this matter forward. As was the case in *Smith,* there is currently no substantive administrative decision for the court to review due to the erroneous dismissal of plaintiffs' Part 8 complaints. Further administrative action will not only promote the purposes of the exhaustion doctrine, *Smith*, 879 F.2d at 1343–44, it may also result in plaintiffs gaining at least some of the relief they seek. *See Ezratty*, 648 F.2d at 776. Although the events which form the basis of plaintiffs' EHA claims are now several years old, the court sees no undue burden upon either plaintiffs or defendants in further administrative action under Part 8 of the Department of Education's special education rules. If all goes well, exhaustion of the Part 8 process should occur within 90 days, even if an affected party

requests a Part 2 hearing under R. 340.-1851(4). Needless to say, the court expects that all parties shall act promptly and in good faith. *Ezratty*, 648 F.2d at 778.

To ensure the integrity of further administrative action, the court will not dismiss the case. Rather, the court will remand plaintiffs' EHA claims to the MAISD and retain jurisdiction over the entire action pending the parties' return to court following adequate exhaustion. *Smith*, 879 F.2d at 1343, 1344 (remand for further proceedings and substantive decision); *Mathews v. Ambach*, 552 F.Supp. 1273, 1283–84 (W.D. N.Y.1982) (action stayed rather than dismissed where judicial supervision of further administrative proceedings required). Counsel for all parties will be required to keep the court informed regarding progress of the Part 8 administrative process.

■ The court suspects that remand is not the outcome envisioned by either plaintiffs or defendants from the current round of motions. Nevertheless, it is a sensible approach warranted by the facts and the law. The court finds the parties' arguments in favor of different results unpersuasive. Defendants contend that the case should be dismissed because the lack of administrative exhaustion does not stem from their dismissal of plaintiffs' Part 8 complaints, but from plaintiffs' choice of an improper administrative procedure. They argue that plaintiffs should have filed a request for a Part 2 "impartial due process hearing," rather than a Part 8 "complaint," because they are seeking modification of their "individualized education plans (IEPs)." The exact relief plaintiffs seek is in fact not spelled out in their rather vague complaint. In any event, if plaintiffs seek IEP modifications cognizable under Part 2 of the Department of Education's special education rules, this does not make plaintiffs' choice to press their claims through Part 8 invalid.

Nothing in Part 2 or Part 8 suggests that the procedures set forth are mutually exclusive. Defendants have cited no Michigan law for that proposition, and the court

reads these two sections of the special education rules as complementary provisions. Indeed, as defendants acknowledge, Part 8 provides a streamlined procedure for resolving assertions of particular "uncorrected" EHA violations. R. 340.1701(g)(iii). Part 2, on the other hand, sets forth procedures governing ongoing review of a special education student's complete educational experience, as embodied and regulated by an IEP. *See, e.g.,* R. 340.1722c. Plaintiffs' Part 8 complaints, as well as their complaint in this court, allege at least in part that defendants' particular acts and practices of excessive discipline violated the EHA. Such allegations are properly cognizable under Part 8 independent of their status under Part 2. These allegations may in fact be more properly resolved under Part 8, since use of Part 2 could dilute attention to plaintiffs' particular EHA claims by involving in the review process possibly extraneous multidisciplinary team members and assessment of educational matters other than classroom discipline about which there is no dispute.

■ As for defendants' contention that plaintiffs should have requested a hearing, Part 8's plain language establishes that a hearing is optional, not mandatory. R. 340.1851(4) ("a hearing may be requested"). This optional hearing provision fully satisfies the EHA, which requires only that parents be accorded an *opportunity* for a hearing to "present complaints with respect to any matter relating to ... the provision of a free appropriate public education" to their children. 20 U.S.C. §§ 1415(b)(1)(E), (b)(2). If defendants believe a hearing would be helpful on remand, they are of course free to initiate one, as are plaintiffs. R. 340.1851(4); R. 340.1724(1).

■ The court finds plaintiffs' argument that further exhaustion would be futile similarly unconvincing. Plaintiffs rely on four specific contentions of futility. Two of these amount to argument that exhaustion should not be required because state and local authorities lack the power to accord plaintiffs complete relief. Part 8 specifically provides, however, that upon a finding that a complaint of EHA violation is valid, the Department of Education "shall direct the agency in violation to take specified corrective action...." R. 340.-1852(3), (6). As the court has previously stated, the fact that administrative authorities may not be empowered to provide all the relief plaintiffs request is immaterial. *Brandon E.,* 595 F.Supp. at 745. A procedure that may result in any substantial relief is not futile.

Plaintiffs also contend that the court should not require exhaustion in this case because their complaint challenges system-wide "behavior modification" policies of general applicability to all special education students. There is case law to the effect that exhaustion may be excused in such circumstances. *See, e.g., Mrs. W. v. Tirozzi,* 832 F.2d 748, 756–57 (2d Cir.1987). Contrary case law exists, however, holding that, even in a class action brought on behalf of 6000 children involving a pervasive challenge to the adequacy of a state's special education funding, the reviewing court has discretion to require exhaustion where appropriate. *Ass'n for Retarded Citizens of Alabama, Inc. v. Teague,* 830 F.2d 158, 161–62 (11th Cir.1987). The Sixth Circuit has described the exceptions to the exhaustion doctrine as "narrow," *Crocker,* 873 F.2d at 936, and both *Crocker* and *Smith* embody the strong policy favoring exhaustion that prevails in this Circuit. The present case is not a class action, and it involves only six students. Under all the circumstances, the court concludes in its discretion that even if plaintiffs' claims apply to system-wide policies beyond their individual cases, the advantages to be gained by exhaustion outweigh any need for more sweeping immediate judicial attention. *See Teague,* 830 F.2d at 161–62.

■ Plaintiffs finally argue that exhaustion is unnecessary and futile because defendants violated their EHA procedural rights. Plaintiffs specifically assert that defendants failed to notify them of their right to a hearing after filing their Part 8 complaints, and also failed to provide them notice and an opportunity to be heard before changing their "educational place-

ments" to include the alleged excessive disciplinary acts and practices, in violation of 20 U.S.C. §§ 1415(b)(1)(C)(i), (b)(1)(D), (b)(1)(E), and (b)(2). The record shows, however, that plaintiffs' first assertion is immaterial, even if it is literally true. While defendants might have technically violated both the EHA and the Department of Education special education rules by not informing plaintiffs of their hearing rights after receiving plaintiffs' Part 8 complaints, plaintiffs in fact had notice of those rights. The complaints show on their face that they were filed for plaintiffs by sophisticated counsel completely familiar with the specific provisions of the Department of Education special education rules. The court must therefore conclude that plaintiffs were aware of R. 340.1851(4), but chose not to request a hearing under that rule for their own reasons. Plaintiffs accordingly cannot rely on this ground to establish their entitlement to exception from the exhaustion requirement. *See Christopher W. v. Portsmouth School Committee*, 877 F.2d 1089, 1097 (1st Cir. 1989) (authorities' failure to specifically inform EHA plaintiff of hearing rights does not excuse exhaustion where plaintiff's actual knowledge of such rights may be inferred from circumstances).

▆▆ The court will assume for present purposes that defendants violated plaintiffs' procedural rights in regard to discipline-related changes in plaintiffs' "educational placements." *But cf. Honig v. Doe*, 484 U.S. 305, 325–26 n. 8, 108 S.Ct. 592, 605 n. 8, 98 L.Ed.2d 686 (1988) (construing EHA "change in placement" in terms of "total exclusion" from educational services). Contrary to plaintiffs' argument, however, such violation does not *ipso facto* excuse exhaustion. Plaintiffs still must show that exhaustion would be futile or inadequate. *Smith*, 879 F.2d at 1343. The court may presume futility where state or local authorities' interference with procedural rights was obstinate or deliberate. *See Christopher W.*, 877 F.2d at 1096–97 (discussing cases); *Doe by Gonzalez v. Maher*, 793 F.2d 1470, 1491 (9th Cir.1986), *aff'd as modified sub nom. Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686

(1988) (denial of procedural safeguards exception to exhaustion doctrine applies where responsible local agency has treated EHA plaintiff *unfairly*) (citing *Christopher T. v. San Francisco Unified School District*, 553 F.Supp. 1107 (N.D.Cal.1982)). The court cannot presume futility, however, where interference with procedural rights stems from nothing more than run-of-the-mill errors in judgment. *See Smith*, 879 F.2d at 1343–44. Rather, as the court has explained, in the latter circumstance the court's duty is to correct the error and remand for the creation of a substantive decision through the administrative process. *Id.*

Here, plaintiffs generally allege that defendants acted in bad faith by failing to notify and hear them before initiating disciplinary changes. Plaintiffs present no evidence, however, that defendants intentionally kept them in the dark about the alleged changes. The record in fact suggests that defendants simply did not view the alleged disciplinary acts and practices as factors that triggered the EHA's procedural safeguards. While defendants' views may have been in error, the court cannot infer deliberate indifference to or active circumvention of plaintiffs' EHA rights. Significantly, once plaintiffs' disciplinary objections came to light, defendants tried to process plaintiffs' Part 8 complaints, although further errors ensued in that process. Consequently, plaintiffs have not convinced the court that further administrative action, now that the court has determined that a substantive administrative decision should be rendered on remand, will prove futile.

Moreover, the Department of Education had nothing to do with the alleged changes in educational placement and denial of procedural rights related thereto. The Department of Education's referral of plaintiffs' concerns to the Department of Social Services indeed suggests that it may lend something of a "sympathetic ear" to plaintiffs now that the court has clarified its concurrent jurisdiction over plaintiffs' claims. *See Christopher W.*, 877 F.2d at 1096. Accordingly, even if the court were

inclined to excuse Part 8 exhaustion before the MAISD on the denial of procedural rights ground, no good reason exists to excuse exhaustion before the Department of Education.

In light of the foregiong, the court will deny defendants' motions for summary judgment on EHA exhaustion grounds, remand plaintiffs' EHA claims to the MAISD, and retain jurisdiction over the entire action.

### III. Conclusion

The accompanying order will summarize the court's rulings. The case will be held in abeyance until the parties return to this court with an appropriately reviewable decision on the merits resulting from further administrative proceedings consistent with this opinion.

### ORDER

In accordance with the opinion filed this date,

IT IS ORDERED that defendants' motions to dismiss plaintiffs' Education of the Handicapped Act money damages claims, taken as motions for judgment on the pleadings, are granted, and those claims are dismissed with prejudice.

IT IS FURTHER ORDERED that defendants' motions for summary judgment on plaintiffs' remaining Education of the Handicapped Act claims are denied.

IT IS FURTHER ORDERED that defendants' motions to dismiss plaintiffs' Rehabilitation Act of 1973 and Ku Klux or Civil Rights Act of 1871 claims, taken as motions for judgment on the pleadings, are dismissed without prejudice.

IT IS FURTHER ORDERED that plaintiffs' remaining Education of the Handicapped Act claims are remanded to the Marquette–Alger Intermediate School District for a decision on the substance of those claims after appropriate administrative proceedings under Part 8 of the Michigan Department of Education special education rules as interpreted in the accompanying opinion.

IT IS FURTHER ORDERED that the court retains jurisdiction over the entire action.

IT IS FURTHER ORDERED that additional proceedings in this court are held in abeyance pending the outcome of the administrative proceedings on remand.

IT IS FURTHER ORDERED that plaintiffs' and defendants' counsel shall jointly inform the court at reasonable intervals of the progress of the proceedings on remand.