ORDER
 

 SILVER, District Judge.
 

 This 42 U.S.C. § 1983 action concerns a grade school disciplinary incident in which an emotionally-handicapped student was briefly confined in a windowless “time out room.” Robert B. Rasmus and Susan Rasmus, on
 
 *712
 
 behalf of Charles Rasmus (“Charles”), their minor child (collectively, “Plaintiffs”), filed this action against the State of Arizona,
 
 [1]
 
 the Paradise Valley Unified School District No. 69 and its Governing Board, Paradise Valley Schools Superintendent James S. Jurs, Roadrunner School Principal Dan Peel and Roadrunner School Teacher’s Assistant Michael Rojas (“Defendants”).
 
 [2]
 
 Plaintiffs claim Defendants’ conduct and policies regarding the time out room violated Charles’ Fourth Amendment right to be free from an unreasonable seizure, his Fourteenth Amendment rights to procedural and substantive due process and his rights under the Americans With Disabilities Act. Plaintiffs also raise various state law claims. They seek monetary damages as well as declaratory and injunctive relief.
 

 On August 12,1996, the Court heard argument on Defendants’ Motion for Summary Judgment. For the following reasons, the Motion is granted in part and denied in part.
 

 Facts
 

 Viewed in the light most favorable to Plaintiffs, the facts are as follows. Charles suffers from Attention Deficit Disorder, which prevents him from making correct judgments concerning how to respond to others. He has a history of disciplinary problems. On October 12, 1993, during his eighth-grade year, he was diagnosed as emotionally disabled and referred from the Sunrise Middle School to the Roadrunner School, a school in the Paradise Valley Unified School District for emotionally disabled children.
 

 Prior to his enrollment, Charles and his mother, Susan, took a tom* of Roadrunner. During the tour, neither were shown the school’s detention hall or “alternative classroom.”
 

 The northeast comer of the alternative classroom contains a closet known as a “time out room.” The closet is approximately 6' x 4' x 8'10". It has plywood covered interior walls and a carpeted floor. It lacks furniture, but is equipped with an overhead light, fire sprinkler, air vent and viewing peephole. A person in the closet can hear and talk to persons in the rest of the classroom. The closet door was equipped with two exterior mounted steel bolt locks at the time of the incident in question.
 

 The room is intended to be used as a disciplinary tool in situations where students become violent or disruptive to the point that they need to be segregated from other students. Before a student is placed there, the student is asked to remove his or her jackets and shoes and empty all pockets to prevent injury to his or her self or property.
 

 On February 22,1994, Charles was attending class at Roadrunner. His teacher, Mrs. Forbes, sent him to the alternative classroom because he called a teacher’s aide a “faggot.” In the detention classroom, Charles became involved in a confrontation with another student. Both students lifted their chairs above their heads and threatened to throw them at each other. Michael “Rene” Rojas, the teacher’s aide then-monitoring the classroom, was able to get the students to put down their chairs and defuse the situation.
 

 Shortly thereafter, Charles and the other student began talking. Mr. Rojas reminded the students that this was against the rules of the alternative classroom and asked them to stop. He warned that further disruption would not be tolerated. The students disregarded his admonitions.
 

 Mr. Rojas then ordered Charles to go into the time out room and ordered the other student to stand in the hallway. Charles emptied his pockets, took off his shoes and entered the room without incident.
 

 Mr. Rojas closed and locked the door behind Charles.
 
 [3]
 
 Charles paced back’ and
 
 *713
 
 forth, tried to open the closet door but found it locked, and tried to look out the peephole but could not see. He felt trapped and was worried about what would happen if another Roadrunner student set a fire while he was in the closet. At his deposition, he stated: “I never wanted to go back in the [alternative] classroom ... because I knew that room was in there.”
 

 After approximately ten minutes, Mr. Rojas let Charles out of the room. Charles was well-behaved for the rest of the day. He finished his school year at Roadrunner with perfect attendance, and was later “mainstreamed” into the Paradise Valley High School.
 

 Charles’ parents were notified on the same day that Charles had been confined in the time out room. Mr. Rasmus called the Fire Department to request a safety inspection of the closet. A deputy fire marshall inspected the room and found that the locks violated the fire code. The locks have since been removed.
 

 The Rasmuses also requested an investigation by the Arizona Department of Education into Roadrunner’s time out practices. The Department found that the school was in compliance with existing laws and regulations.
 

 Mr. Rojas testified at his deposition that prior to starting his job at Roadrunner he had received no training in special education. He also testified that he had been told that he had “absolute discretion” to put students in the time out room.
 
 (Id.
 
 at 3, ¶ 16.) He admitted that there is no upper limit on the amount of time a child could be placed in the closet.
 

 Dan Peel, the Roadrunner School Principal, testified that he was personally involved with the implementation of the policy governing the use of the time out room. He stated that the room had been used in the school since 1983 without problems.
 

 Summary Judgment Standard
 

 In evaluating a summary judgment motion, the Court must determine whether the pleadings and supporting materials show there is no genuine issue of material fact and, taking the evidence in a light most favorable to the nonmovant, that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);
 
 California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,
 
 818 F.2d 1466, 1468 (9th Cir.1987),
 
 cert. denied,
 
 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).
 

 Discussion
 

 In their Motion, Defendants argue that Charles’ placement in the time out room did not violate the Fourth or Fourteenth Amendments. They also contend that Plaintiffs’ have not stated a claim under the Americans With Disabilities Act. Furthermore, they ar.gue that the individual Defendants are entitled to qualified immunity. Finally, they contend that summary judgment is appropriate on Plaintiffs’ state law claims. These contentions are addressed in turn.
 

 I. Fourth Amendment
 

 The Fourth Amendment’s prohibition against unreasonable searches and seizures applies to school officials.
 
 New Jersey v. T.L.O.,
 
 469 U.S. 325, 333, 105 S.Ct. 733, 738, 83 L.Ed.2d 720 (1985). To establish a Fourth Amendment violation, a plaintiff must prove that (1) his or her person was seized or things were searched; and (2) the seizure or search was unreasonable.
 
 Katz v. United States,
 
 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
 

 A. Seizure
 

 Defendants contend that Charles was not seized within the meaning of the Fourth Amendment because he “voluntarily” entered the time out room. (Mot. at 11.) An encounter becomes a seizure when its circumstances “become so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he does not respond ...”
 
 United States v. Analla,
 
 975 F.2d 119, 124 (4th Cir.1992),
 
 cert. denied,
 
 507 U.S. 1033, 113 S.Ct. 1853, 123 L.Ed.2d 476 (1993). Charles’ testified that he felt he had no choice when Mr. Rojas ordered him to enter the room; he had seen Mr. Rojas physically seize other students and
 
 *714
 
 throw them into the room when they refused to enter on their own; he entered the room on his own to avoid such treatment. This testimony is sufficient to withstand summary judgment on the issue of whether a seizure occurred.
 

 B. Reasonableness
 

 Defendants argue that even if Charles was “seized” within the meaning of the Fourth Amendment, his seizure was reasonable under the circumstances.
 

 The Supreme Court has recognized that the Fourth Amendment reasonableness standard operates differently in the school context than in the law enforcement context:
 

 [T]he accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search [or seizure] has violated or is violating the law. Rather, the legality of the search should depend simply on the
 
 reasonableness, under all the circumstances,
 
 of the search [or seizure].
 

 T.L.O.,
 
 469 U.S. at 341, 105 S.Ct. at 742 (emphasis added).
 
 [4]
 
 Thus, a search of a student by a school official is reasonable if it is “justified at its inception” and “was reasonably related in scope to the circumstances which justified the interference in the first place.”
 
 Id.
 
 Specifically, a seizure is reasonable in its scope “when the measures adopted are reasonably related to the objectives of the [seizure] and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.”
 
 Id.
 
 at 342, 105 S.Ct. at 743. This relaxed Fourth Amendment standard, long-applied in cases involving school searches, has also been applied to school seizure cases.
 
 See, e.g., Edwards v. Rees,
 
 883 F.2d 882, 884 (10th Cir.1989).
 

 This standard was applied to a school’s use of time out rooms in
 
 Hayes Through Hayes v. Unified School Dist. 377,
 
 669 F.Supp. 1519 (D.Kan.1987),
 
 rev’d on other grounds,
 
 877 F.2d 809 (10th Cir.1989) The
 
 Hayes
 
 plaintiffs were parents of two students in a special education program. Because both children had behaved in a disruptive manner and violated school rules, the children were required, at various times, to stay in a 3' x 5' room for time-out periods and in-school suspensions. The defendants filed a motion for summary judgment, arguing that the school’s use of the time out room was constitutionally permissible. 669 F.Supp. at 1529.
 

 The eourt granted the motion, holding as a matter of law that the defendants’ conduct was reasonably related to their authority and ability to discipline students and that such discipline, including placement in time out rooms, did not offend the Fourth Amendment.
 
 Id.
 
 The court observed that the school officials were bound by strict regulations governing the placement of students in the time out room. For example, the school officials could not place a student in a time out room until the student had been written-up three times for disciplinary violations.
 
 Id.
 
 at 1528.
 

 In the present, case, Defendants contend that they are entitled to judgment as a matter of law because
 
 Hayes
 
 establishes that time out rooms do not offend the Fourth Amendment. This Court, however, finds that
 
 Hayes
 
 is distinguishable. The school officials in
 
 Hayes
 
 were required to comply with strict procedures before placing students in time out, including recording three prior disciplinary violations and giving students written notice of their infractions. 669 F.Supp. at 1528. In contrast, Mr. Rojas had “absolute discretion” to place students in the time out room for indeterminate periods of time. This is a critical distinction, and it takes this case out of the ambit of the
 
 Hayes
 
 holding.
 

 There are other differences as well. Unlike the students at Roadrunner, the
 
 Hayes
 
 students were allowed to work on classroom material while sitting in the room.
 
 Id.
 
 Moreover, in
 
 Hayes
 
 there was no evidence
 
 *715
 
 that students were ever locked in the room. Finally, in
 
 Hayes
 
 there was no evidence that the room was unsafe. Here, in contrast, a deputy fire marshall found that the Roadrunner School’s time out room violated the fire code. In view of these differences,
 
 Hayes
 
 is factually distinguishable and does not constitute a blanket endorsement of time out rooms.
 
 [5]
 

 Defendants next argue that summary judgment is warranted because Plaintiffs have not produced evidence sufficient to raise any genuine fact issues concerning the reasonableness of the seizure. This is simply not the case. Plaintiffs have produced
 
 AZ-TAS Themes & Issues: Incorporating the Use of Non-Aversive Behavior Management (“AZ-TAS”),
 
 a November 1992 publication of the Arizona Department of Education, Special Education Section.
 
 AZ-TAS
 
 contains guidelines governing the use of time out rooms for special-needs students. As Plaintiffs point out, Defendants’ time out practices violated many, if not all, of the
 
 AZ-TAS
 
 guidelines.
 

 In particular,
 
 AZ-TAS
 
 states that “[t]he use of seclusionary time-out is not advocated by the Amona Department of Education, Special Education Section (ADE/SES). School districts, agencies or private schools, however, may elect to seclude students in situations when specified by their IEP.” An IEP is a document which indicates the goals and objectives for each student receiving special education services. Charles’ IEP did not include the use of seclusionary time out as a behavior management technique.
 

 In addition,
 
 AZ-TAS
 
 states that ADE “strongly recommends that institutions using seclusionary timeout develop policies and procedures to ensure that students’ personal rights are protected.” In particular, ADE suggests that: schools develop a “written behavior management plan ... as part of the IEP for that student that governs the use of timeout”; schools use timeout only with the written consent of the student’s parents; seclusion occurs only under circumstances and for durations specified in the behavior plan and under direct observation of program staff; and extra safety precautions are taken to prevent emergency situations. Here, the Roadrunner school’s use of time out violated nearly all of these recommendations. Charles’ IEP contained no provision for seclusionary time out; his parents never provided written consent approving the school’s use of the time out room; seclusion occurred without regard to a behavior management plan; and the time out room violated applicable fire codes.
 

 Most significantly,
 
 AZ-TAS
 
 includes a blanket prohibition on locked time out. The document states:
 

 Some techniques are never permissible because they infringe on basic human and civil rights. Unacceptable highly aversive techniques include the following: ____ 8. Locked seclusion or isolation timeout, including circumstances in which the person cannot be seen by staff and/or cannot see staff____
 

 The Roadrunner time out room was equipped with double steel bolt locks and a peephole which allowed teachers to look into the room but prevented students from looking out. The room violated the
 
 AZ-TAS
 
 prohibition on locked time out rooms. Moreover, there is admissible evidence that during the incident Charles was locked inside.
 

 At oral argument, Defendants argued that Plaintiff failed to provide sufficient foundation for the admissibility of
 
 AZ-TAS.
 
 Plaintiffs’ counsel pointed out that Defendants’ intended trial witnesses have referred to the report in correspondence with each other. He stated that he intended to call these witnesses at trial to provide foundational grounds for admission of the document. Defendants’ counsel conceded that
 
 *716
 
 Plaintiffs’ counsel reserved the right to call Defendants’ witnesses at trial. Accordingly, the Court finds that Plaintiffs’ counsel has adequately addressed Defendants’ evidentiary objection.
 

 Defendants also argue that the
 
 AZ-TAS
 
 guidelines have not been incorporated into law and are therefore nonbinding. In addition, they point out that the Arizona Department of Education found that the Roadrunner School has not violated any laws or regulations.
 
 [6]
 

 Despite these arguments, the Court finds that
 
 AZ-TAS
 
 provides admissible evidence from which a reasonable factfinder could conclude that Defendants’ placement of Charles in a locked time out room was “excessively intrusive” in light of his age and emotional disability.
 
 See T.L.O.,
 
 469 U.S. at 341, 105 5. Ct. at 742-43 (reasonableness depends on all of the circumstances).
 
 AZ-TAS
 
 contains comprehensive and specific guidelines prepared by the state agency that monitors special education programs throughout Arizona. These guidelines include general standards addressing the use of seclusionary time out and specific prohibitions on locked time out. They indicate that placing Charles in a locked time out room constituted an unreasonable response to his behavioral problems. Therefore, Plaintiffs’ production of
 
 AZ-TAS
 
 satisfies their burden, on summary judgment, of producing sufficient evidence to create a genuine issue of material fact with respect to the reasonableness of Charles’ confinement. Accordingly, Defendants are not entitled to summary judgment on Plaintiffs’ Fourth Amendment claim.
 
 [7]
 

 II. Fourteenth Amendment
 

 Defendants also seek summary judgment with respect to Plaintiffs’ Fourteenth Amendment claims.
 

 A. Procedural Due Process
 

 Students have a property interest in receiving a public education.
 
 Goss v. Lopez,
 
 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). Similarly, the Due Process Clause forbids arbitrary deprivations of liberty:
 

 [WJhere school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, we hold that Fourteenth Amendment liberty interests are implicated.
 

 Ingraham v. Wright,
 
 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977).
 

 Nevertheless, not every use or even misuse of school discipline implicates the Fourteenth Amendment.
 
 Dickens,
 
 661 F.Supp. at 157. Where the interference with a student’s property or liberty interest is
 
 de minimis,
 
 due process procedures are not invoked.
 
 Ingraham,
 
 430 U.S. at 674, 97 S.Ct. at 1414.
 

 Defendants argue that Plaintiffs have no claim for violation of Charles’ property interest in receiving a public education. The Court • agrees. Charles was excluded from the classroom and denied the ability to work on his assignments for only ten minutes. Defendants’ restriction of his property right was
 
 de minimis.
 

 Similarly, the violation of Charles’ liberty interests was also
 
 de minimis.
 
 In
 
 Ingraham,
 
 the Supreme Court held that school officials’ use of corporal punishment implicated Fourteenth Amendment liberty interests because the officials’ conduct involved “restraining the child and inflicting appreciable physical pain.” 430 U.S. at 674, 97 S.Ct. at 1414. Here, Plaintiffs have presented no evidence that Charles was forcibly restrained, physically harmed or suffered
 
 *717
 
 pain. Instead, the record reflects that Charles entered the room without protest, was only confined for ten minutes, had room to pace, was able to talk to his teacher and returned to the classroom exhibiting no evidence of having suffered trauma. Accordingly, the limitations on his liberty interests were
 
 de minimis
 
 under Ingraham,
 
 [8]
 

 Even assuming that the infliction of appreciable emotional or psychological pain also implicates liberty interests, Plaintiffs have presented no expert evidence indicating that Charles suffered such pain. The evidence presented by Plaintiffs — deposition testimony from Charles that he was afraid, and deposition testimony from Mrs. Rasmus indicating that Charles was claustrophobic — is insufficient to overcome the
 
 de minimis
 
 restriction. As noted, Charles left the room exhibiting no signs of trauma. More important, his subsequent success at the Roadrunner School and Paradise Valley High School suggest that he suffered no significant harm. Accordingly, Plaintiffs have not established that Defendants’ conduct implicated a due process liberty interest. Defendants are entitled to summary judgment on Plaintiffs’ procedural due process claims.
 

 B. Substantive Due Process
 

 Plaintiffs also claim that Charles’ confinement violated substantive due process. However, under the rule of
 
 Graham v. Con-nor,
 
 substantive due process cannot supply the basis for a civil rights claim if the challenged governmental conduct is prohibited by another, more specific, constitutional right.
 
 See Graham,
 
 490 U.S. 386, 394-95, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989) (excessive force claims arise under the explicit textual sources of constitutional protection found in the Fourth Amendment, not under the more subjective standard of substantive due process).
 
 See also Albright v. Oliver,
 
 510 U.S. 266,---, 114 S.Ct. 807, 813-14, 127 L.Ed.2d 114 (1994) (rejecting claim that defendants violated substantive due process by initiating a criminal prosecution without probable cause; because the Fourth Amendment protected against the area of government conduct challenged by the plaintiff,
 
 Graham
 
 precluded additional relief under substantive due process).
 

 In
 
 Armendariz v. Penman,
 
 75 F.3d 1311 (9th Cir.1996), the Ninth Circuit applied
 
 Graham
 
 outside of the criminal context. The
 
 Armendariz
 
 plaintiffs, owners of low-income housing units in the City of San Bernardino, Calif, (the “City”), alleged that the City violated substantive due process when it conducted a series of unannounced housing code enforcement sweeps, invoked its emergency powers to close down the plaintiffs’ properties when no real emergency existed, and then denied rehabilitation loans to several of the plaintiffs. 75 F.3d at 1314. The defendants, various city officials, filed a motion for summary judgment on the basis of qualified immunity. The district court denied the motion.
 
 Id.
 

 The Ninth Circuit reversed in part, holding that the officials were entitled to qualified immunity on the plaintiffs’ substantive due process claim. The appellate court found that that claim was barred by
 
 Graham,
 
 because the area of government conduct challenged by the plaintiffs’ lawsuit involved
 
 *718
 
 rights protected by the Fourth Amendment’s prohibition on unreasonable seizures and the Fifth Amendment’s ban on takings without just compensation.
 
 Id.
 
 at 1320. The court wrote:
 

 Because the Fourth and Fifth Amendments provide explicit limitations on the type of government conduct challenged by the plaintiffs,
 
 Graham
 
 dictates that those Amendments, not the Fourteenth Amendment’s guarantee of substantive due process, should guide the analysis of the plaintiffs claim. This conclusion follows straightforwardly from
 
 Graham,
 
 for while this case does not arise in the criminal context, the Supreme Court’s admonition in
 
 Graham
 
 is no less applicable here----
 

 Id.
 
 The Court concluded that
 
 Graham
 
 “is an insurmountable hurdle for the plaintiffs’ substantive due process claim.”
 
 Id.
 
 at 1324.
 

 Here,
 
 Graham
 
 precludes Plaintiffs’ substantive due process claim because the Fourth Amendment places explicit limitations on the type of government conduct challenged. Accordingly, Defendants are entitled to summary judgment on Plaintiffs’ substantive due process claim.
 

 III. Americans With Disabilities Act
 

 Title II of the ADA applies to public services and requires that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. § 12132. To establish a violation of the ADA a plaintiff must show:
 

 (1) that he is a qualified individual with a disability;
 

 (2) that he was either excluded from participation in or denied the benefits of some public entity’s services, programs, or activities, or was otherwise discriminated against by the public entity; and
 

 (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiffs disability.
 

 Concerned Parents to Save Dreher Park Center v. City of West Palm Beach,
 
 846 F.Supp. 986, 990 (S.D.Fla.1994).
 

 Assuming that Charles is a qualified individual with a disability, the record does not indicate that he was excluded from any service or program or denied any benefit on account of his disability. At most, he was excluded from the classroom for ten minutes as a result of his own misbehavior. After the ten minutes elapsed, he resumed participation in school programs for the rest of the year without incident. Plaintiffs have provided no evidence indicating that Charles was treated differently than other Roadrunner School students on the basis of his disability. Accordingly, Plaintiffs have failed to state a claim for relief under the Americans With Disabilities Act. Summary judgment is warranted on this claim as well.
 

 IV. Qualified Immunity
 

 Public school officials are entitled to assert a qualified immunity defense.
 
 Wood v. Strickland,
 
 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975). When an official asserts qualified immunity, “the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful.”
 
 Act Up!/Portland v. Bagley,
 
 988 F.2d 868, 871 (9th Cir.1993). This standard requires a two-step analysis: “1) Was the law governing the official’s conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?”
 
 Id.
 

 The determination of whether the law governing the conduct at issue is clearly established is a question of law for the court.
 
 Id.
 
 at 873. The determination of whether the facts alleged could support a reasonable belief that the defendant’s conduct was lawful is also a question for the court.
 
 Id.
 

 At the time of Charles’ confinement, it was well-established that the Fourth Amendment applied, albeit in a relaxed manner, to school officials’ searches and seizures of students.
 
 T.L.O.,
 
 469 U.S. at 341-12, 105 S.Ct. at 742-43. In addition, the
 
 Hayes
 
 case indicated that placing disruptive students in
 
 *719
 
 tíme out rooms may not violate the Fourth Amendment. 669 F.Supp. at 1528-29. However, neither ease held that placing students in locked time out is constitutionally improper. Moreover, neither case indicated that confining students for periods of ten minutes is improper.
 
 [9]
 

 Based on the lack of clearly established law and the undisputed facts, the Court finds that the individual Defendants could have objectively believed that their conduct and policies were lawful. Mr. Rojas seized Charles only after Charles had acted violently and disruptively. He then locked Charles in the time out room to protect the other students and enable Charles to cool off. Mr. Rojas never left the alternative classroom during the period of Charles’ confinement. In addition, Mr. Rojas was able to observe Charles and communicate with him. In light of the absence of clearly established law, the Court finds that Mr. Rojas could have objectively believed that his conduct was lawful under the circumstances.
 

 Mr. Peel and Mr. Jurs were responsible for formulating and implementing the school’s time out policies. These policies authorized school personnel to use the time out room as a means of protecting students and staff and providing disruptive students with time to cool down. Because no decisional law held that such policies contravene the Fourth Amendment, the Court finds that Mr. Peel and Mr. Jurs could have reasonably believed that their policies and conduct were lawful.
 

 The Ninth Circuit has held that where a public official enforces the law “in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of [the law],” he or she will be entitled to immunity even if there is no clear case law declaring the officer’s particular conduct unconstitutional.
 
 Pierce v. Multnomah County, Oregon,
 
 76 F.3d 1032, 1037 (9th Cir.1996);
 
 Grossman v. City of Portland,
 
 33 F.3d 1200, 1209-10 (9th Cir. 1994). Here, Mr. Rojas, Mr. Peel and Mr. Jurs’ conduct was not so offensive that they should have recognized that it violated constitutional law. Accordingly, the Court holds that all three individual Defendants are entitled to qualified immunity.
 
 [10]
 

 V. State Law Claims
 

 Plaintiffs allege that Defendants’ conduct violated Article II, Section 22, of the Arizona State Constitution. That section governs the posting of bail for persons charged with a crime. Because Charles was never charged with a crime, the section is inapplicable in this action.
 

 Plaintiffs also allege a claim for false imprisonment. False imprisonment is the detention of a person without his consent and without lawful authority.
 
 Creamer v. Raffety,
 
 145 Ariz. 34, 699 P.2d 908, 915 (Ariz. Ct.App.1984). Arizona law gives teachers and administrators the authority to discipline students for disruptive conduct. A.R.S. § 15-341(A)(13).
 
 [11]
 
 Therefore, Defendants
 
 *720
 
 possessed lawful authority to detain Charles after he acted violently and disruptively in the alternative classroom. Plaintiffs’ false imprisonment claim lacks merit.
 

 In addition, Plaintiffs allege the torts of intentional and negligent infliction of emotional distress. In their Response, Plaintiffs acknowledged that these claims lack merit. Thus, Defendants are entitled to summary judgment on all of Plaintiffs’ state law claims.
 

 At oral argument Plaintiffs conceded that their request for injunctive relief is inappropriate and should be abandoned. The Court therefore dismisses Plaintiffs’ request for injunctive relief.
 

 Finally, at oral argument the Court citing
 
 Eaglesmith v. Ward,
 
 73 F.3d 857 (9th Cir.1995) and
 
 Belanger v. Madera Unified School Dist.,
 
 963 F.2d 248, 250-51 (9th Cir. 1992),
 
 cert. denied,
 
 507 U.S. 919, 113 S.Ct. 1280, 122 L.Ed.2d 674 (1993),
 
 [12]
 
 raised the possibility that the Eleventh Amendment was a jurisdictional bar to imposing damage liability against Paradise Valley Unified School District and its Governing Board. Counsel for the parties offered no definitive opinion on this issue. The Court ordered that the matter be briefed. On August 23, 1996 the Court received correspondence from counsel for the Defendants stating that before this matter was initiated in federal court the parties agreed “to waive any applicable Eleventh Amendment immunity claim.” Accordingly, counsel for both parties requested to be excused from briefing the Eleventh Amendment issue. The Court would not force the parties to engage in senseless, futile and expensive labor. Here, however, such effort is essential. The Court is not persuaded that the parties did, as they attempted to, effectively and legally waive the jurisdictional impediment for initiating action against the School District and the Governing Board.
 

 “[T]he Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar” that may be raised
 
 sua sponte
 
 at any stage of the proceedings.
 
 Edelman v. Jordan,
 
 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974).
 
 See Mellos v. Brownell,
 
 250 F.2d 35, 36 (D.C.Cir.1957) (“[Wjhether the complaint should be dismissed as a suit against the United States to which it has not consented ... is the sort of jurisdictional question which may be raised at any time, either by the parties or by the court
 
 sua sponte.”) A
 
 damages action against a state agency is tantamount to a suit against the state itself and absent consent or appropriate waiver the action is jurisdiction-ally barred by the Eleventh Amendment. Moreover, a waiver must be “unequivocally expressed” by the state.
 
 United States v. Nordic Village, Inc.,
 
 503 U.S. 30, 32-34, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992).
 
 See Alabama v. Pugh,
 
 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978);
 
 Florida Dept. of State v. Treasure Salvors, Inc.,
 
 458 U.S. 670, 683-87, 102 S.Ct. 3304, 3314-15, 73 L.Ed.2d 1057 (1982). In
 
 Edelman v. Jordan,
 
 415 U.S. at 673-75, 94 S.Ct. at 1361, the Supreme Court of the United States held “we will find waiver only where stated ‘by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.’ ”
 

 Consequently, the parties will be ordered to file a
 
 joint
 
 brief in support of their position that the Eleventh Amendment does not apply to this case and that this Court is vested with subject matter jurisdiction over the School District and Governing Board.
 

 Accordingly,
 

 IT IS ORDERED granting in part and denying in part Defendants’ Motion for Summary Judgment (Doc. No. 23)
 

 FURTHER ORDERED denying as moot Defendants’ Motion for Summary Ruling on Defendants’ Motion for Summary Judgment (Doc. No. 26).
 

 FURTHER ORDERED that the parties are to file a joint brief within thirty (30) days from the date of this Order in support of their position that the Eleventh Amendment does not apply and that this Court is vested
 
 *721
 
 with subject matter jurisdiction over the School District and Governing Board.
 

 [1]
 

 . On April 28, 1995, the Court granted the State of Arizona’s Motion to Dismiss on the ground that the State is immune from suit under the Eleventh Amendment.
 

 [2]
 

 . Defendants Jurs, Peel and Rojas are being sued in their individual capacity only. (Complaint ¶¶ 4-6.)
 

 [3]
 

 . Mr. Rojas denies that he locked the door. However, Charles testified at his deposition that he heard the sound of metal scraping against metal when Mr. Rojas closed the door behind him. Moreover, at least three other students who witnessed the incident told police investigators that the Mr. Rojas locked the door. For purposes of summary judgment, the Court takes
 
 *713
 
 as true Plaintiffs’ allegation that the door was locked.
 

 [4]
 

 . A recent and well written law review article discusses the contours of the student's Fourth Amendment rights. Darrel Jackson, Note,
 
 The Constitution Expelled: What Remains of Students' Fourth Amendment Rights?,
 
 28 Ariz.St.L.J. 673 (1996).
 

 [5]
 

 . Defendants also cite
 
 Dickens hy Dickens v. Johnson County Bd. of Educ.,
 
 661 F.Supp. 155 (E.D.Tenn.1987), which involved a due process challenge to a school's use of a segregated time out area. The court found no constitutional violation. 661 F.Supp. at 158. The
 
 Dickens
 
 time out area consisted of a three-sided cardboard partition which was not attached to the wall and could easily be moved by pushing it aside. It contained a desk and enabled the student to see and hear his teacher. The student was allowed to leave the area to use the bathroom, attend other classes, observe the chalkboard and go to lunch. These facts, which stand in sharp contrast to the facts of the present case, render
 
 Dickens
 
 inapposite.
 

 [6]
 

 . The Arizona Department of Education investigatoiy findings referred to the
 
 AZ-TAS
 
 guidelines, but found that the guidelines were not violated because a behavior management plan had not been developed for Charles. The investigatory findings indicate that the
 
 AZ-TAS
 
 guidelines constitute probative evidence of the reasonableness of Defendants' conduct.
 

 [7]
 

 . The record appears bereft of evidence indicating that Charles suffered actual injury as a result of being placed in the time out room. Where proof of actual injury is lacking, a jury nevertheless may award nominal damages.
 
 Wilks v. Reyes,
 
 5 F.3d 412, 416 (9th Cir.1993) (nominal damages may be awarded where plaintiff cannot prove actual injury as a result of Fourth Amendment violation).
 

 [8]
 

 . This holding is consistent with the Court’s analysis of the Fourth Amendment.
 
 De minimis
 
 violations of the Fourth Amendment, like
 
 de minim-is
 
 violations of the Fourteenth Amendment, are not actionable.
 
 See, e.g., Ruvalcaba v. City of Los Angeles,
 
 64 F.3d 1323 (9th Cir.1995) (action may not lie for
 
 de minimis
 
 intrusion into privacy interests protected by the Fourth Amendment),
 
 cert. denied,
 
 — U.S.-, 116 S.Ct. 1841, 134 L.Ed.2d 943 (1996). Whether a constitutional violation is
 
 de minimis
 
 must be considered with reference to the nature of the interests protected by the particular constitutional right in question. Charles’ confinement implicates at most a
 
 de minimis
 
 liberty interest under the Fourteenth Amendment, because Plaintiffs have produced no evidence indicating that Charles was forcibly restrained and subjected to appreciable physical pain.
 
 See Ingraham v. Wright,
 
 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977) (in context of school discipline, Fourteenth Amendment protects liberty interests where student is restrained and physically harmed). In contrast, Defendants’ alleged invasion of Charles’ Fourth Amendment rights was more than
 
 de minimis,
 
 because Plaintiffs have presented evidence indicating that placing Charles in a locked time out room was an unreasonable reaction to his behavior.
 
 See New Jersey v. T.L.O.,
 
 469 U.S. 325, 341-342, 105 S.Ct. 733, 742-743, 83 L.Ed.2d 720 (1985) (Fourth Amendment prohibition on unreasonable seizures implicated where measures taken are not reasonably related to circumstances which justified seizure).
 

 [9]
 

 . The
 
 AZ-TAS
 
 guidelines provided evidence indicating that Charles' seizure was unreasonable. However, agency guidelines or policies do not constitute clearly established law for purposes of qualified immunity.
 
 See Gutierrez v. Municipal Court,
 
 838 F.2d 1031, 1048-49 (9th Cir.1988) (EEOC guidelines held not to clearly establish the law with respect to the validity of a municipal court English-only rule).
 

 [10]
 

 . The qualified immunity defense may not be raised by state or local government entities or by persons sued in their official capacity.
 
 See, e.g., Hafer
 
 v.
 
 Melo,
 
 502 U.S. 21, 25, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991) (qualified immunity may only be raised by persons sued in their individual capacity);
 
 Owen v. City of Independence,
 
 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980) (qualified immunity defense not available to localities). Therefore, the remaining Defendants in this action — the Paradise Valley Unified School District No. 69 and the district’s governing
 
 board
 
 — cannot assert qualified immunity. However, these entities may be immune from suit under the Eleventh Amendment if they function as arms of Arizona’s state government.
 
 See Belanger v. Madera Unified School Dist.,
 
 963 F.2d 248, 254-55 (9th Cir.1992) (California school districts are state agencies entitled to assert Eleventh Amendment immunity),
 
 cert. denied,
 
 507 U.S. 919, 113 S.Ct. 1280, 122 L.Ed.2d 674 (1993).
 

 [11]
 

 . A.R.S. § 15-341(A) states that school officials shall:
 

 13. Hold pupils to strict account for disorderly conduct on school property.
 

 [12]
 

 . In
 
 Belanger
 
 the Ninth Circuit held that the Eleventh Amendment applied to a school district in California and precluded suit against the school district.